ADA WATTERLUND *v.* ALVAH B. BILLINGS AND JESSE D. BILLINGS.

Special Term at Rutland, November, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 6, 1942.

*Clayton H. Kinney* and *Philip B. Billings* for defendants.

*Asa S. Bloomer* for plaintiff.

MOULTON, C. J. This is an action in tort to recover for personal injuries alleged to have been caused by the acts of the defendants' employees. The verdict and judgment were for the plaintiff and the cause is here on the defendants' exceptions.

The first of these concerns the denial of a motion for a directed verdict, made upon the grounds that the evidence failed to show actionable negligence on the part of either or both of the defendants, that it conclusively appeared that the plaintiff was contributorily negligent, and that she assumed the risk of injury.

Taking the evidence in the most favorable light for the plaintiff, and excluding the effect of modifying evidence, as we must when the question arises upon a defendant's motion for a verdict (*Tinney* v. *Crosby*, 112 Vt. 95, 101, 22 Atl. 2d. 145, 148), the material facts as the jury might have found them are these: The house belonging to the plaintiff's father, in which she and her husband lived, had been sold to the defendants on February 6, 1940, and at the time of the accident was being demolished to

make room for the erection of a gasoline filling station. All of the household furniture had been removed from the upper floor and taken away from the premises, but on the lower floor there remained the plaintiff's piano, cook stove, a folding cot bed, several chairs and some kitchen utensils. With the permission of the defendants, who, at the time of the sale, had assured her that there was no hurry about her moving, although early in March they asked her to move as quickly as possible, the plaintiff had been sleeping and getting her meals at the house during a part of the time since it was sold and had been there every day to superintend the removal of the furniture. She stopped spending the nights there on April 20 and thereafter employed a watchman to remain on the premises to safeguard such property as remained therein. Her presence from day to day was known to the workmen employed by the defendants in tearing down the partitions and taking up the flooring on the upper floor. On the morning of April 23, she went to the house to prepare breakfast for the watchman and herself. Two employees of the defendants were throwing boards out of the window directly over the front door or passing them to two others, who were in the front yard to receive them. When the plaintiff entered she spoke to the men upstairs, and was answered. She discovered a quantity of plaster in the front hall and, in order to prevent injury to her piano, she closed the door leading from the hall to the room in which it was kept, and then went to the front door and asked Austin Taylor, one of the men in the yard, not to drop any boards upon two barberry bushes which she had permission from the defendants to remove. Taylor told her to look out as she might be hurt because the lumber was being passed out and she stopped where she was, inside the door with the casing of the door over her head where, as she said, she did not think that she would be hit. Just as she spoke a board was passed out which was too short for Taylor to reach. The man at the window dropped it and it fell, striking the plaintiff on her left foot, and causing a laceration of the flesh and a fracture of one of the metatarsal bones which resulted in a painful and incapacitating injury.

The defendants argue that the plaintiff was a trespasser, or at most a licensee with a standing no better than that of a trespasser, hence that they can be held liable only for a

260

wilful or wanton injury, and that no act of that nature was shown to have been committed. As we have seen, the evidence tended to show that she was in the house by the permission of the defendants and it cannot be said as a matter of law, as the defendants insist, that because of the length of time that had passed since the permission was given and the subsequent request that she should move as quickly as possible, her right to be there had terminated. Assuming that she was either a trespasser or a licensee and not, as the Court ruled, a tenant at will, the rule of liability for which the defendants contend is not in accord with the decisions of this Court. While they were not bound to keep the premises safe for her, or to warn her of their dangerous condition, they owed her the duty of active care to protect her from injuries from force negligently brought to bear upon her. *Lucas* v. *Kelley*, 102 Vt. 173, 179, 147 Atl. 281. If they or their servants knew or ought to have known of her presence it was incumbent upon them to exercise reasonable care to avoid injuring her. This is the "most humane and reasonable rule" applied in *Lindsay, Admr.* v. *Canadian Pacific R. R. Co.*, 68 Vt. 556, 567, 35 Atl. 513; *Seymour* v. *Central Vermont R. R. Co.*, 69 Vt. 555, 557, 38 Atl. 236; and *Dent, Admr.* v. *Bellows Falls and Saxton's River Street Ry. Co.*, 95 Vt. 523, 530, 116 Atl. 83. See, also, Restatement of Torts, Secs. 336, 341; Eldredge, Modern Tort Problems, pp. 163-186.

■ Although the evidence showed that the men on the upper floor could not see where the plaintiff was standing at the moment, the jury could infer that they were not only aware that she was on the premises, but, from her speaking to them, in the front part of the house and near the door. Taylor, indeed, knew just where she was and realized the possibility of an injury to her. Whether, as a prudent man, he should have warned the other workmen before they dropped the board or under the circumstances the others should have taken steps to ascertain her presence, so that proper precautions against dropping the board in her vicinity could have been taken, were questions for the jury to determine. The issue of negligence was one of fact. It is not necessary to dwell upon the distinction between active and passive negligence suggested in *Lucas* v. *Kelley, supra.*

■ And so also the question of her contributory negligence

was for the jury, whose province it was to say whether, upon the evidence, she was in the exercise of reasonable care in standing where she said she did.

 The doctrine of assumption of risk may apply where there is no contractual relation, such as that of master and servant, between the parties. *Hutchinson* v. *Knowles,* 108 Vt. 195, 206, 184 Atl. 705; *Gover* v. *Central Vermont Ry. Co.,* 96 Vt. 208, 213, 118 Atl. 874. It is founded upon the maxim *volenti non fit injuria* and implies that the person against whom it is invoked voluntarily, that is, by the exercise of free will and intelligent choice, has put himself in the way of a danger which he knew and comprehended, or was so obvious that he must be taken to have known and comprehended it. *Hutchinson* v. *Knowles, supra; Landing* v. *Town of Fairlee,* 112 Vt. 127, 22 Atl. 2d. 179, 181; *Tinney* v. *Crosby,* 112 Vt. 95, 105, 22 Atl. 2d. 145, 150, and cases cited. It is clear that it cannot here be said, as a matter of law, that the risk was assumed by the plaintiff, within the rule above set forth. There was no error in the denial of the motion for a verdict.

 The court instructed the jury upon the subjects of negligence and contributory negligence, but did not mention assumption of risk. The defendants excepted to this omission, but the court declined to add anything to the charge on the ground that the matter had been covered by the instruction on contributory negligence. No request had previously been made, but the court was bound to charge upon every essential part of the case without request. *In Re Estate of Delligan,* 111 Vt. 227, 229, 13 Atl. 2d. 282; *Stoddard Bros.* v. *Howard,* 101 Vt. 1, 5, 139 Atl. 776.

It is argued by the plaintiff that the doctrine of assumption of risk had not been pleaded or made an issue by the defendants, and that, aside from this, there was no question for the jury because the evidence showed conclusively that the risk was not assumed.

 As a general rule cases are tried in court on the issues made by the pleadings, but counsel may, by conduct or agreement, limit or enlarge such issues. *Howard Nat. Bank* v. *Wilson & Trustee,* 96 Vt. 438, 443, 120 Atl. 889; *Valiquette* v. *Smith et al.,* 108 Vt. 121, 127, 183 Atl. 483. Whether, as the plaintiff claims, the question should have been raised by plea is something

to which we need give no attention because the transcript makes it clear that it was presented on trial by the motion for a verdict and was argued to the jury by the defendants' counsel, without objection by the plaintiff. It was treated as an issue below, and we treat it so here.

There is a distinction between the doctrine of contributory negligence and the doctrine of assumed risk, since there may be the voluntary assumption of the risk of a known danger such as will bar one from recovery for injury to person or property, even though in the exercise of due care. *Gover* v. *Central Vermont Ry. Co.*, 96 Vt. 208, 213, 118 Atl. 874; *Craig* v. *Parkhurst*, 111 Vt. 486, 489, 18 Atl. 2d. 173. And so a proper charge on contributory negligence will not suffice if the evidence makes a case for the application of the doctrine of assumed risk. *Gover* v. *Central Vermont Ry. Co.*, *supra*.

While, as we have said, it could not be held as a matter of law that the plaintiff assumed the risk, there was evidence from which a reasonable inference could be drawn to the contrary. In fact, in her brief on the motion for a verdict the plaintiff states that the question was for the jury. There was evidence tending to show that boards were being thrown down from the window, as well as being passed out to the men below, and that the plaintiff knew this before she went to the door; that Austin Taylor warned her of the danger when she first came there, before she said anything to him, and that she remained where she was and spoke concerning the barberry bushes; that she was then standing, not inside the door, but so that her body was almost flush with the outside wall of the house, and her feet at about the outer edge of the threshold; that the boards were coming down close to the wall of the house; and that there was an interval of time after Taylor had warned her and before the board was dropped, in which she could have stepped back.

With this evidence in the case the question whether she knew and comprehended the risk of a board being dropped or thrown so that it would strike her, and voluntarily encountered the danger, or whether such risk was so obvious that she must be taken to have known and comprehended it, was for the jury, and should have been submitted to them. The exception to the failure to do so must be sustained.

Other exceptions to the charge are briefed by the de-

fendants. One was taken to an instruction that under the circumstances existing on the day and at the place of the occurrence it was the duty of the defendants, acting through their employees, to use due care to anticipate the presence of the plaintiff on the premises. The grounds stated were that there was no reason why they should have anticipated her presence at the place where she received her injury, and that it was not pointed out in the charge that the defendants and their workmen did not know that she was there. No error appears here. We have already indicated that there was evidence tending to show that the workmen who were on the upper floor knew or ought to have known that she was near the door, and there is no question as to Taylor's knowledge. The exception is unavailing.

Another exception was taken to an instruction that it was the duty of the defendants, acting through their employees, to use due care to avoid injuring the plaintiff when her presence became known to them. This exception is argued upon the theory that their duty was only to refrain from doing her a wilful or wanton injury. We have already disposed of this contention.

Two exceptions were taken to an instruction that the jury "should consider the warning which one of the defendants' employees says he gave this plaintiff, and whether or .not such warning was timely so that the plaintiff could have acted upon it effectively." The grounds of the exceptions were respectively that there was no jury question as to whether the warning was given, and that the evidence conclusively showed that the warning was timely. We do not construe the language used by the court as indicating that the giving of the warning by Taylor was a controverted issue of fact. And we take the question whether the warning was timely to mean whether it was given in due season to permit the plaintiff to realize her danger and withdraw from where she was standing. It is true that Taylor testified that after he spoke to her he received a board from above, turned and placed it on a pile, and then turned back to take the one which fell upon the plaintiff's foot. The plaintiff did not directly deny this, but her testimony is open to the construction that she spoke concerning the barberry bushes when she first came to the door, and the accident happened immediately. Under these circumstances the question was for the jury. These exceptions are not sustained.

*Judgment reversed and cause remanded.*