ALICE COBB *v.* RUTLAND SAVINGS BANK.

Special Term at Rutland, November, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and
JEFFORDS, JJ.

Opinion filed January 5, 1943.

118

[REDACTED]

*Vernon J. Loveland* and *Christopher A. Webber* for the plaintiff.

*Lawrence & O'Brien* for the defendant.

JEFFORDS, J. The defendant owned a house located in the City of Rutland which contained two separate apartments which it rented. One, referred to as the downstairs apartment was occupied by Peter Carter, his wife and daughter. The so called upstairs apartment was occupied by Mary Beashau, her mother and brothers. In the early evening of January 16, 1941, the plaintiff made a social call on Mrs. Carter. The plaintiff left the apartment by its side door and while descending the steps which led to the walk that ran along the side of the house, she slipped on some ice that had formed on one of the steps and injured herself. The plaintiff brought this action of tort against the defendant, alleging negligence on its part because of failure to maintain eaves troughs on the house. She claimed that because of this failure water was permitted to fall from the roof of the house and form ice on the steps in question. Trial was had by jury with a resulting verdict and judgment for the defendant. The case is here on plaintiff's exceptions. Those which she briefs relate only to the charge of the Court to the jury.

The first exception is to the following portion of the charge:

"Now if you should find that Mrs. Carter, that is the tenant, prior to the time the plaintiff received her claimed injuries had instructed the plaintiff not to use the north or side entrance in question but to use

the front entrance exclusively, then you would be warranted in finding that the plaintiff was a licensee when she used the side entrance."

The ground of the exception to this statement by the Court was, in substance, that there was no evidence in the case to warrant this portion of the charge in the language given as all the evidence shows the plaintiff was not instructed but merely requested to use the front door.

On direct examination Mrs. Carter testified that on several occasions prior to the accident she had asked the plaintiff to use the front entrance of the house. She was then asked, "Did you at any time say anything to her with reference to her use of the rear entrance?" She answered, "I asked her to use the front entrance, not to use the back." She was then asked, "And why did you ask her that?" She replied, "Why it, no light in the back and I have a light in the hall, and there is only a couple of steps to come up from the front porch and at the back there are five." There is no need to discuss the distinctions that may exist between the meaning of "instruction" and "request." Granting that the former word denotes more in the nature of a command than the latter, it is sufficient to say that the above language used by Mrs. Carter could be reasonably interpreted to mean that she meant by it more than a mere request to use the rear door. This being so, the Court was warranted in putting to the jury the question of whether she meant to instruct the plaintiff in the matter. The plaintiff relies on certain testimony of Mrs. Carter given on her cross examination which was to the effect that the reason she said what she did to the plaintiff about using the front entrance was simply to be helpful to the latter and "just to be easier for her." While counsel for the plaintiff might well have argued to the jury that this latter testimony supported the contention of a mere request, such testimony did not conclusively destroy the inference to be reasonably drawn from the previous testimony of the witness that more than a request was intended. It was for the jury to say what interpretation they would place on the testimony of Mrs. Carter relating to the matter in question.

The plaintiff also complains because the Court used the word "exclusively" in this portion of its charge. No harm resulted in the use of this word for it would reasonably follow that if Mrs.

Carter intended to instruct the plaintiff to use the front, rather than the rear entrance, she meant that the plaintiff should so use it at all times. Consequently the use of "exclusively" by the Court may be treated as surplusage.

The Court submitted to the jury the question of whether the roof of the house at the time of the accident was under the control of the defendant. The grounds of the exception to this portion of the charge which are relied on by the plaintiff in her brief are, first, that there is no evidence in the case which would warrant the jury in finding that the roof was not under the control of the defendant, and second, that there is a presumption of law that the control of the roof remained with the defendant insomuch as the house was rented to two tenants.

The burden of proving that the defendant had control of the roof was upon the plaintiff. She claims, in effect, that she so conclusively sustained this burden that there was no evidence in the case on which to submit this issue to the jury. In support of this claim she asserts that the undisputed evidence shows that neither tenant had any rights, control or otherwise, in or over the roof. This claim in respect to the Carter apartment is supported by the evidence. It finds no such support, however, as regards the upstairs apartment. The only witness who testified as to the leasing of this latter apartment was Mary Beashau. She testified that she did not go to the bank at the time of the leasing as her brother went for her. She also stated that she and her family only occupied the second floor. The following questions and answers appear in the transcript.

> Q. "And was there anything said at any time indicated whether you had any right to occupy anything other than the second floor?"
> A. "No."
> Mr. Mower—(Attorney for the defendant) "Who said it please?"
> Q. "Did anybody in the bank?"
> A. "No, sir."
> Mr. Mower—"I object to that, doesn't appear it is an agent of defendant authorized to say it."
> Court—"Perhaps that objection is well taken; we will exclude the question as it stands."

It is apparent that the testimony of this witness falls far short of having the effect claimed for it by the plaintiff. It shows that she and her family only occupied the second floor but it is silent as to whether or not by the terms of the letting the defendant retained control of the roof or relinquished it to this tenant.

The plaintiff also relies on a promise to put up eaves spouts by George Neary who had general management of various properties owned by the defendant. The testimony as to this promise was objected to on the ground that as it was not made to one of the tenants it could not be considered as amounting to an agreement on the part of the defendant to do what was promised. Counsel for the plaintiff disclaimed anything for the testimony as respects any agreement and it apparently was admitted as tending to show notice to the defendant of the condition of the roof. While this testimony might well tend to show that the defendant acknowledged that the matter needed attention it falls far short of an admission that the defendant had retained control of the roof. At the most it was merely evidence for the jury's consideration on that issue.

█ In regard to her claim of a presumption, the plaintiff, in her brief, says she "thinks" there is a presumption that when a house is occupied by two or more tenants, the roof remains under the control of the landlord. As authority for the above observation the plaintiff quotes a portion of the statement made by the annotator at the commencement of the annotation appearing in 43 ALR at page 1292. After the quotation appears the following: "43 ALR 1292 and many annotated cases." The plaintiff does not attempt to point out which, if any, of the numerous cases cited therein support that particular part of the entire statement in the annotation on which she relies. She, in effect, leaves it to us to read the cases and determine whether they support the quotation or the ground of her exception. This we are not required to do. The question of presumption not being adequately briefed is not for consideration. *Johnson* v. *Moore,* 109 Vt 282, 288, 196 A 246; *Dailey* v. *Ludlow,* 102 Vt 312, 316, 147 A 771; *Capital Garage* v. *Powell,* 97 Vt 204, 209, 122 A 423; *Dent* v. *Bellows Falls, etc. St. Ry. Co.,* 95 Vt 523, 534, 116 A 83; *Hopkins* v. *Sargent's Est.,* 88 Vt 217, 222, 92 A 14.

An exception was taken to the submission to the jury of the question of whether the plaintiff assumed the risk of injury in

using the steps in the condition they were claimed by her to have been at the time of the accident. The ground of the exception was that there was no evidence in the case which would warrant the jury in finding that the plaintiff assumed such risk.

There was sufficient evidence in the case to warrant the submission of this issue to the jury. From the plaintiff's testimony it reasonably appears that on two or three occasions during the autumn of 1940 and the early winter of 1941 when she had come to visit the Carters, prior to the date of the accident, she had noticed ice on the rear steps. She stated that on the night in question she observed ice on the sidewalks and in the driveway between the Carter apartment and the house next to it. She testified that on the occasions when she had seen the ice on the steps she did not walk on the ice but on that part of the steps farthest from the house so as to avoid the ice. In describing her entrance the night in question she said that she went up on the outside part of the steps so that she could hang on to a post. When she came out of the house she stated she started to come down that part of the steps which was near the house so that she "could feel along down and walk down." Carter's testimony was to the effect that there was ice on the rear steps and the walk leading to them a great share of the time during the winter months. There was evidence to the effect that the plaintiff was a frequent visitor at the Carter home.

From the foregoing evidence the jury could reasonably have found that the plaintiff knew or reasonably should have known the slippery condition of the steps on the night of the accident and that she knew and comprehended the risk of using them and voluntarily encountered that danger. This being so, there was no error in submitting this question of assumption of the risk to the jury. *Watterlund* v. *Billings,* 112 Vt 256, 262, 23 A2d 540; *Tinney* v. *Crosby,* 112 Vt 95, 106, 22 A2d 145; *Craig* v. *Parkhurst,* 111 Vt 486, 489, 18 A2d 173.

*Judgment affirmed.*