Floyd I. Butterfield, Admr., Estate of Reginald W. Butterfield *v.* Community Light & Power Co., Inc.

(49 A2d 415)

October Term, 1946.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed November 6, 1946.

*Wayne C. Bosworth* for the defendant.

*Lawrence & O'Brien* for the plaintiff.

BUTTLES, J. This is an action to recover damages for the death of the plaintiff's intestate, a boy of the age of 10 years seven months, caused, it is alleged, by the wrongful act of the defendant. The next of kin, for whose benefit the action was brought are the plaintiff and his wife Margaret, parents of the deceased. Verdict and judgment were for the plaintiff in the sum of $6500. and the case is here on the defendant's exceptions.

It appears that on May 22, 1945, a line of poles extended along the highway upon which the plaintiff's premises abutted. Upon the plaintiff's land and a short distance from his farm buildings there was an old decayed elm tree, some of whose limbs overhung wires carried on these poles. At that point there were four wires owned and used by the defendant, two of which, attached to cross arms near the tops of the poles, carried an electrical current of about 2200 volts. The other two, some distance below these, were low tension wires by means of which a current of about 110 volts was furnished to the plaintiff's milk house and other buildings. On the date named a large limb fell from the elm tree, breaking one of the high tension wires which lodged upon the low tension wires below. Shortly afterwards the body of the deceased was found in the milk house under circumstances indicating that he had been electrocuted by contact of a metal pail that he carried with the metal milk cooling tank.

The finding of negligence on the part of the defendant, implied

by the verdict, is not challenged.  One contention of the defendant, raised by exception to the denial of its motions for a directed verdict and to set aside the verdict, is that the beneficiaries were guilty of contributory negligence as a matter of law in knowingly permitting the limb, which for a long time had been rotted and insecure, to remain and in not removing it.  It is also contended that the beneficiaries assumed the risk of the injuries complained of.

██ In an action by an administrator under our statute to recover "such damages as are just" for the benefit of the parents, as next of kin, for the death of a child by wrongful act, the action being in the right and interest of the parents, their negligence, proximately contributing to the injury, bars recovery.  *Ploof* v. *Burlington Traction Co.,* 70 Vt 509, 41 A 1017, 43 LRA 108. It is the duty of an abutter to keep his property from becoming a source of danger to the traveling public by reason of any defect either in construction, use, or repair, so far as the exercise of the care of a prudent man can guard against the same.  *Murray* v. *Nelson,* 97 Vt 101, 107, 122 A 519; 45 CJ 839, § 251.  Assuming that this general rule is applicable here, even though the person injured was not a traveler but was situated as was the deceased, we come to the question whether there was evidence tending to show that the plaintiff exercised the care of a prudent man.

There can be no doubt that the plaintiff knew of the condition of the tree and its branches.  It stood by itself some 200 feet from his horse barn.  The evidence is not disputed that on two prior occasions limbs falling from this tree had broken a high tension wire and an end had fallen to the ground.  No damage appears to have resulted except that on the first occasion the grass had been set on fire.  On the second occasion a passerby had thrown the wire out of the road.  Each time employes of the power company came up later and spliced the broken wire.  The first occasion was about the summer of 1942 and the second about one year later. On the second occasion their attention was called to the condition of the tree and they asked the plaintiff if they might cut it.  He told their foreman that he would be glad to have them do so and that he would help take it away after it was cut.  They chopped a scarf in the tree but decided that their saw was too short to cut the tree and left it.  Nothing further was done about felling the tree.  On each occasion when the wire fell the plaintiff called the

defendant and told the girl in the office about it. No suggestion was made that he cut the tree and he couldn't do it without someone to supervise. When he saw the wire down and burning the grass he knew that anyone would be apt to get a severe shock from it. The plaintiff knew absolutely nothing about handling high tension wires. If he had attempted to cut the tree the limbs might have fallen on the high tension wires. He testified that he wouldn't have dared try it. There was evidence tending to show that by proper ground connections the fatal current of high voltage electricity could have been prevented from entering the milk cooling tank.

On the question whether there was negligence on the part of the plaintiff it is material to consider the consequences that a prudent man might reasonably have anticipated from his actions or failure to act. *Perkins v. Vt. Hydro-Elec. Corp.*, 106 Vt 367, 381, 177 A 631; *Woodcock's Admr. v. Hallock*, 98 Vt 284, 290, 127 A 380. Does the evidence establish that the plaintiff, as a prudent man, should have anticipated more serious consequences than a grass fire or a serious shock to one coming in contact with the fallen wire and should he have taken precautions against the danger other than those he did take? Certainly notifying the defendant of the fall of a limb as soon as he learned of it, permitting and requesting its foreman to remove the tree and offering such help as he was able to give were the natural first steps to be taken. When those steps failed to result in the removal of the tree, it could not be claimed that he should incur the risk of trying to remove the tree himself. He made repeated requests and demands on the defendant to do so. The defendant was fully informed of the situation and had knowledge of the hazard which it may be inferred the plaintiff did not have. A trivial circumstance had prevented the defendant from completing the removal of the tree after starting to remove it. A long delay followed, but the fact of the delay may have lulled the plaintiff into the belief that safeguards against any serious damage existed of which he had no knowledge and that further demands upon the defendant for the removal of the tree were unnecessary.

Nothing is shown tending to connect the other beneficiary, Mrs. Butterfield, with the accident except that she had lived on the farm with her husband for some four years. It cannot be in-

ferred that she had any greater knowledge of the situation or any better opportunity to take precautions against injury than he had. If the evidence tended to exonerate him from blame it did the like for her. The question of freedom from contributory negligence was properly submitted to the jury with respect to both of them.

Where no contractual relationship existed between the parties the doctrine of assumption of risk is applicable only where the injured party knew and appreciated the danger and of his own free will put himself in the way of it. *Rheaume* v. *Goodro,* 113 Vt 370, 373, 34 A2d 315; *Huestis* v. *Lapham,* 113 Vt 191, 197, 32 A2d 115; *Watterlund* v. *Billings,* 112 Vt 256, 261, 23 A2d 540; *Cole* v. *N. Danville Coop. Cr. Assn.,* 103 Vt 32, 40, 151 A 568. From what has been said it is clear that it could not be ruled as a matter of law that the beneficiaries assumed the risk of injury to themselves or their children.

■ A ground of exception to the court's charge and to denial of the defendant's motion to set aside the verdict was that it was error to permit the jury, in awarding damages, to consider benefits that the parents might have received after the time when the deceased would have reached his majority. While there is much conflict of authority on this question, it has been held that under the Vermont statute (P. L. 2859 and 2860), which awards "such damages as are just with reference to the pecuniary injuries resulting from such death", the damages are not confined to the loss of services during the minority of the deceased child, but may, upon proper showing, include damages for the loss of reasonable expectation of pecuniary benefit, accruing after minority. It is said that every case of this nature must stand upon its own facts and circumstances. To be considered are the character, ability, and willingness of the deceased to help his parents and contribute to their needs; their condition and necessities; their mutual relations and attitude; and their probable future course of conduct in reference to each other. *D'Angelo Admr.* v. *Rutland Ry. Lt. and Pr. Co.,* 100 Vt 135, 135 A 598, and cases cited. See *Borden* v. *Fitchburg R. R. Co.,* 70 Vt 125, 127, 39 A 771; *Lazelle* v. *Newfane,* 70 Vt 440, 444, 41 A 511.

In the present case the undisputed evidence is that at the time of the trial the plaintiff was 40 years old and his wife was 34. They owned by the entireties a farm of about 185 acres of which

they had taken possession in 1941 under a bond for a deed. In 1944, after they had paid a stipulated amount of the purchase price, they received a deed of the property. In 1945 the plaintiff bought the adjoining Bromley farm, the size of which does not appear. They had a dairy of about 45 head and an unspecified amount of farm equipment. The value of the parents' land and other property does not appear, nor the amount of their indebtedness, if any. They had a baby and three other children aged respectively 4, 7, and 12 years. Nothing appears as to the health of the parents except that the plaintiff, at some time evidently recent, had been confined to a hospital.

The deceased was a strong rugged boy, very industrious and always willing to work with his father on the farm. He was in the sixth grade and regular in attendance at school and church. He could do almost anything on the farm that his father could do. He could put the milkers on the cows. He got the cows from pasture, got in the wood and helped with haying and planting. He could drive the tractor, the truck, or the horses. He was always there to help his father in whatever he was doing. He was a 4H boy and was raising a calf that his father had given him. He saved his pennies and had bought a $25 bond and some saving stamps. He wanted to be a farmer. His father valued his services when in school at $30 per month and $60 or $70 per month when not in school, in addition to room and board.

It is true that in this case the probability of future assistance being given to the parents may not have been as great as was the probability of such assistance being given to the mother in *D'Angelo* v. *Rut. Ry. Lt. & P. Co., supra,* and a longer time would elapse before the deceased would have attained his majority, but the evidence was of similar character to that in the D'Angelo case and was such, in our opinion, that the jury could find that the parents had a reasonable expectation of pecuniary benefit from the continuance of the life of the deceased beyond his minority. This case is distinguishable from *Allen, Admr.* v. *Moore,* 109 Vt 405, 199 A 257. In the present case the deceased was much interested in farming and wanted to be a farmer. It was planned that after finishing high school he should continue in that occupation. He had already raised a heifer from a calf that his father had given him. This and other evidence to which we have re-

ferred would warrant the jury in finding a reasonable probability that after reaching his majority the deceased would have continued to aid his parents in running the farm. In the Allen case the opinion states that there was no evidence of a reasonable expectancy of pecuniary benefit to the parents from the continuation of the deceased's life beyond her minority. There was no evidence that she had any special interest in housework. She seems to have been interested in the work of the salvation army, in which she was engaged when she met her death. As we have said every case of this nature must stand upon its own facts and circumstances. There was no error in not limiting to the deceased's minority the time for which recovery could be had.

Another ground of the motion to set aside the verdict was that the verdict was excessive. In support of its contention that it was error to deny the motion on this ground the defendant submits a computation from which it appears that the present worth of the maximum value shown by the evidence of the deceased's earnings to his parents, prior to his attaining the age of 21 would be $5069.80, leaving about $1500 of the verdict which must have been allocated to anticipated benefits after that time. It is estimated that at least $3000 would have to be contributed to produce a present worth of $1500. But contributions totaling $3000 for the remainder of the father's life expectancy would be at the rate of about $176 per annum, or a somewhat smaller sum for the remainder of the mother's expectancy which is a longer period. This clearly would not be an extravagant amount.

The defendant calls attention to certain necessary or probable expenses of the deceased while under age 21, like medical, dental and clothing bills, school expenses and the practice of permitting him to keep some of his earnings, etc., which are not included in its computation. Such expenses, it is said, would materially decrease the amount of the verdict that would be allowed for benefits during that period and correspondingly increase the amount that must have been allocated to the period after the deceased would have reached his majority. There was no evidence as to the probable amount of such expenses, but in the absence of evidence the jury will be presumed to have been able to make a fairly accurate estimate thereof and it is to be inferred that they did so. Allen v. Moore, 109 Vt 405, 409. But a verdict based on an estimated

yearly contribution of considerably more than $176 could not be said, as a matter of law, to be excessive. Furthermore the increase of the deceased's earning power between the ages of 11 and 21, of which no account is taken, might be expected to cover at least a large part of such expenses. The verdict was not so excessive as to require the court, in the exercise of its discretion to set it aside. The defendant has briefed no other exceptions.

*Judgment affirmed.*