425 F.2d 674
 Dorothy Limoges RAMSAY as Guardian of the Person and Estate
of Raymond Paul Blow, Appellee,
v.
C. E. BROWN, a/k/a Clayton E. Brown, or C. E. Brown
Agricultural Implement and Machinery Dealer, Appellant.
 No. 500, Docket 34161.
 United States Court of Appeals, Second Circuit.
 Argued March 9, 1970.
Decided April 24, 1970.
 
 Lawrence Miller, Rutland, Vt. (French & Miller, Rutland, Vt., on the brief), for appellant
 Thomas J. Kenney, Burlington, Vt., for appellee.
 Before SMITH, KAUFMAN and HAYS, Circuit Judges.
 KAUFMAN, Circuit Judge:
 
 
 1
 Defendant in this Vermont negligence action appeals from a jury verdict of $27,500 in favor of plaintiff's ward for personal injuries sustained on defendant's property. He raises several objections to the trial court's charge, none of which we find sufficiently compelling to require reversal.
 
 
 2
 Raymond Paul Blow, ward of his aunt, Dorothy Limoges Ramsay,[1] was ten years old at the time of the accident on October 16, 1965. On that day he and two friends were 'playing war' on a parcel of land in Essex Junction, Vermont, that C. E. Brown, the defendant, used for the purpose of storing some of the farm machinery and implements in which he dealt. One of the machines was a hay elevator, apparently rather unstable, and not under any cover or secured by any guy wire. The hay elevator was either on a rutted track that ran through Brown's parcel or a few feet away from it. In the course of their play, one of the other boys climbed on the elevator; it tipped forward and toppled onto Blow, causing severe injuries to his head. Brought to the hospital by a police ambulance, he was operated on immediately and a portion of the brain tissue removed. Evidence at trial indicated that in addition to medical expenses, hospitalization, and immediate impairments, the boy at the time of trial continued to suffer from difficulty in concentrating, an apparent loss of memory capacity, and some trouble with his vision. He had fallen a year behind in school, and his grades declined considerably.
 
 
 3
 Defendant objects to several aspects of the trial judge's charge, contending that it failed properly to apply the Vermont law on duties of owners of land.
 
 
 4
 Plaintiff's first theory of recovery, reflected in the charge, is that because the Village of Essex Junction had reserved a right of way through Brown's land, 'for any legal purpose,' Blow was not a trespasser but a 'traveler,'[2] properly on a public way, to whom an abutter such as Brown owed a duty of care. See Butterfield v. Community Light & Power Co., Inc.,115 Vt. 23, 49 A.2d 415 (1946). See also Wright v. Shedd, 122 Vt. 475, 177 A.2d 240 (1962).
 
 
 5
 The evidence did show such a right of way, 30 feet in width, serving primarily to permit the Village to maintain a sewer located to the rear of Brown's property. Further testimony established that in the course of placing machinery about the field, defendant may have obstructed the right of way granted the Village; in any event the Village, defendant Brown, and others who passed through the lot used the rutted track on which the accident occurred in place of the right of way. Hence the rutted track or roadway might properly have been found to be a substituted right of way, to which the duties attendant on the original right of way would attach. See Prouty v. Bell, 44 Vt. 72, 76 (1871). While the evidence indicating that the Village's right of way was equivalent to a 'public highway' was sparse, it is clear that it was used at least as a service roadway for the sewer. Moreover, the evidence revealed that others (berry pickers, high school students, and children) used it as a pathway through the property. See City of Winooski v. State Highway Board, 124 Vt. 496, 207 A.2d 255 (1965).
 
 
 6
 In Winooski, the Vermont Supreme Court decided that when the question was whether a reservoir access road was a private way or a public highway, the appellate court would afford the lower court's ruling that the roadway was public 'every presumption in favor of the ruling appealed from that is not inconsistent with the record.' 207 A.2d at 259. See also Johnson v. Wells-Lamson Quarry Co., 103 Vt. 178, 153 A. 203, 204 (1931). Bound as we are by Vermont law, we cannot say that the evidence was insufficient to permit a finding that the roadway was a public way. Thus we are not inclined to disturb that portion of Judge Gibson's charge which would have permitted the jury to find plaintiff's ward properly on a substituted public way, and therefore owed a duty of care by Brown as an abutter.
 
 
 7
 Judge Gibson also charged in the alternative that if the jury found Blow a trespasser, Brown would be liable only if he or his employees negligently set in motion an 'active force' that could cause injury, and then failed to warn those whom he might reasonably have expected to be within the scope of the risk created. See Watterlund v. Billings, 112 Vt. 256, 23 A.2d 540 (1942). While the evidence showing such an active force-- basically that Brown'semployee had set the hay elevator in an unstable position near a roadway frequented by children-- was thin, nonetheless the charge clearly delineated the circumstances under which the doctrine could be applied, was correct in substance, and not wholly without evidentiary support. See Watterlund v. Billings, 112 Vt. 256, 23 A.2d 540 (1942).
 
 
 8
 Moreover, we see no merit in defendant's claim that the judge charged the doctrine of attractive nuisance in violation of Vermont precedents; nor can we agree with defendant that his conduct in failing to secure the hay elevator properly was insufficient to support a finding of negligence.
 
 
 9
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Defendant suggests, for the first time on appeal, that plaintiff was appointed guardian to confer diversity jurisdiction. Since defendant did not object on this ground below, no evidence was introduced on this point beyond the fact of the guardian's appointment. Plaintiff guardian, a Massachusetts resident, is her ward's aunt and when the appointment appears proper on its face, we will not, after a full trial in the district court, lightly assume that the appointment was made to confer diversity jurisdiction. See Barnes v. Tenin, Docket No. 34108 (slip op. 2107) (Apr. 2, 1970), at 2110 n. 2 ('The record contains no indication that Mr. Barnes was appointed in order to confer federal diversity jurisdiction'); cf. O'Brien v. AVCO, 425 F.2d 1030, (2d Cir., 1969) (member of law firm representing estate appointed administrator for the 'sole purpose of invoking federal diversity jurisdiction')
 
 
 [2]
 While describing Blow as a 'traveler,' which is the term used in the Vermont cases, the district judge also indicated that Blow was a 'licensee.' Under Vermont law, a landowner need only avoid affirmatively injuring a licensee, Watterlund v. Billings, 112 Vt. 256, 23 A.2d 540, 542 (1942), and so that term seems inappropriate in describing a user of a public way to whom an abutter owes a duty of care. See Butterfield v. Community Light & Power Co., 115 Vt. 23, 49 A.2d 415 (1946); Murray v. Nelson, 97 Vt. 101, 122 A. 519 (1923). Nonetheless, considered in its entirety, the charge did indicate that if Blow was on a public way he was owed a duty of care, and mere use of the word 'licensee' instead of 'traveler' was unlikely to mislead the jury. See La Faso v. La Faso, 126 Vt. 90, 223 A.2d 814 (1966) (the charge 'is not to be considered piecemeal, but with an eye to its general content')