(Nos. 61486, 61574 cons

JOHN E. BALLWEG, Adm'r, Appellant, v. THE CITY OF SPRINGFIELD *et al.*, Appellees (Philip Henrici, Appellant).

*Opinion filed October 17, 1986.—Rehearing denied December 1, 1986.*

MILLER, J., took no part.
MORAN and RYAN, JJ., concurring in part and dissenting in part.

Thomas F. Londrigan, of Londrigan, Potter & Randle, P.C., of Springfield, for appellant John E. Ballweg.

Charles J. Gramlich and Daniel C. Lanterman, of

Gramlich Law Offices, P.C., of Springfield, for appellant Philip Henrici.

John L. Swartz, of Giffin, Winning, Lindner, Cohen & Bodewes, P.C., and Grady E. Holley, of Holley, Keith & Mehlick, all of Springfield, for appellees Coleman Company and Coast Catamaran Corporation.

John E. Guy, of Chicago (Robert S. Soderstrom, of McKenna, Storer, Rowe, White & Farrug, and Robert L. Kiesler, of Kiesler & Berman, both of Chicago, and James A. Swanson, of Oak Brook, of counsel), for *amicus curiae* Illinois Defense Counsel.

Robert A. Glenn, of Chicago (Thomas A. Demetrio and David A. Novoselsky, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

CHIEF JUSTICE CLARK delivered the opinion of the court:

We have consolidated two cases in this appeal. Both cases arose out of a boating accident on Lake Springfield which resulted in the electrocution deaths of Donna Ballweg and Jana Welch. Donna Ballweg's father, the administrator of her estate (the plaintiff), brought the first of these consolidated cases against the manufacturer of the boat, Coast Catamaran Corporation (Coast); Coast's parent company, the Coleman Company (Coleman); and the city of Springfield. The complaint sought recovery based on strict liability in tort. Coast and Coleman filed counterclaims against the pilot of the boat, Philip Henrici (Henrici), seeking contribution.

The second consolidated case concerns a covenant not to sue which was entered into between the plaintiff, the city, and Henrici, whereby the city paid the plaintiff the sum of $37,500 and Henrici paid the plaintiff the sum of $15,000. Prior to trial, the trial judge, finding this settle-

ment to have been made in good faith, dismissed the city and Henrici.

After a jury trial in the circuit court of Sangamon County, judgment was entered on a jury verdict in favor of the plaintiff for $304,388.35 compensatory damages and $1,021,833 punitive damages. Coast and Coleman appealed to the appellate court.

The appellate court reversed and remanded for a new trial. (130 Ill. App. 3d 241.) We granted the plaintiff's and Henrici's petitions for leave to appeal. The issues presented concern: (1) the admission of certain evidence; (2) the award of certain damages; (3) certain jury instructions; and (4) dismissal of the counterclaims against Henrici.

The facts in the case at bar are identical to the facts in *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25. *Ogg* related to the appeal concerning Jana Welch's death. The proof was essentially the same as to both victims of this occurrence. We shall recount the evidence here only to the extent necessary for our disposition of the issues raised.

Ballweg, Welch, and Henrici were sailing a Hobie Cat catamaran on Lake Springfield. Henrici manned the tiller and controlled the main sail while Welch operated another sail. As the boat passed through a channel, its main mast contacted an overhead power line which spanned the channel. The stern momentarily dipped and Henrici received an electrical shock when his legs became immersed in water. The boat began rocking, causing repeated contact between the mast and the power lines. Flames flashed from the mast and from beneath the boat. Ballweg and Welch jumped into the water and, as the mast once again hit the power lines, the two women went limp in the water and sank. Their bodies were subsequently recovered by divers. Henrici, who had remained on the boat, was rescued.

## Collateral Estoppel

As stated earlier, the *Ogg* case dealt with the same set of facts as this case. In *Ogg*, a jury found Coast and Coleman liable. The plaintiff now asserts that the doctrine of collateral estoppel should apply to the issue of liability and that, therefore, that issue need not be relitigated.

Collateral estoppel is an equitable doctrine of judicial origin created to prevent relitigation of previously adjudicated claims and is founded in principles of judicial economy. *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148.

This court has held that the only pertinent questions for the utilization of collateral estoppel are: (1) whether the issue decided in the prior adjudication is identical with the one presented in the case in question; (2) whether there had been a final judgment on the merits; and (3) whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.

In this case we have identical issues and parties; however, there was not a final judgment on the merits. For purposes of applying the doctrine of collateral estoppel, finality requires that the potential for appellate review must have been exhausted. (*Relph v. Board of Education* (1981), 84 Ill. 2d 436, 442-44.) The verdict in *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, rendered on June 25, 1982, was appealed. The appeal was not concluded until after the motion for collateral estoppel was denied. Therefore, the appellate court correctly affirmed the trial judge's denial of collateral estoppel due to the lack of finality of the *Ogg* judgment.

## Prior Accidents

Another issue raised by the plaintiff is whether the introduction of evidence concerning prior accidents in-

volving Hobie Cats and power lines was proper.

At trial the plaintiff introduced several charts listing accidents involving Hobie Cat boats and power lines over a 10-year period to indicate that Coast and Coleman had prior notice that the Hobie Cat was dangerous. The charts showed the date of the accident, the State in which it occurred, and the number of resulting deaths and injuries. The exact nature of each accident is not described other than by the charts' titles, which read: "Hobie Cat Power Line Accidents."

The appellate court held that the admission of this evidence was reversible error because the plaintiff failed to show that the prior accidents were caused by a design defect which was substantially similar to that alleged in the present case.

This court held in *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, that evidence of prior occurrences may be admissible to establish the dangerousness of a product. The prior accidents must, however, be "substantially similar" to the accident in question. 77 Ill. 2d 434, 441.

The appellate court suggests, and Coast and Coleman argue, that the plaintiff had the burden of showing that each prior electrocution was caused in the same manner as in the present case. That is to say that in each case the mast had to contact the power line, be severed, and electrify the entire boat. The evidence indicated the following regarding the Hobie Cat: (1) the boat is composed of multiple *all-metal* connective pathways from powerline to ground; (2) the Hobie Cat can electrocute a user on land or in the water; (3) the Hobie Cat can electrocute a person in contact with the boat or several hundred people up to 100 feet away in water according to Doctor Charely, Coleman's own expert witness.

In view of *Rucker*, the evidence was properly introduced showing that Coast and Coleman had notice that

mast–power-line contacts by Hobie Cats resulted in electrocutions.

## Remedial Acts

At trial, the plaintiff presented testimony that the city had taken remedial action regarding the power lines crossing Lake Springfield. The city placed warning signs in the area and had placed some of the power lines under water. The issue is whether the circuit court erred in admitting this evidence.

In support of the introduction of this evidence, the plaintiff cited *Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313. *Sutkowski* held that, in a products liability case, evidence that a product has been changed after the occurrence of an accident is relevant and material in determining that an alternative design was feasible. The appellate court in this case correctly held:

> "*Sutkowski* is inapposite to the present case. Evidence of the city's remedial acts may have been relevant in a suit against the city, but it clearly has no relevance in determining an alternative design of defendants' Hobie Cat. Nor can we see the relevance of this evidence to any other issue in this case. The trial court's failure to sustain defendants' objections to this evidence was erroneous." 130 Ill. App. 3d 241, 245.

In concluding the evidence was irrelevant, the appellate court failed to determine whether the error was prejudicial or harmless. While we believe that the introduction of the city's remedial acts was error, we are not convinced that such irrelevant evidence substantially affected the jury's decision. Our conclusion is reinforced by the fact that another jury reached the same decision on virtually the same evidence, even though evidence of the city's remedial acts was not introduced. See *Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25.

## Decedent's Pain and Suffering

The next issue for our consideration is whether damages for pain and suffering should have been awarded. At the conclusion of the trial, the jury awarded the plaintiff $5,000 for the decedent's pain and suffering. Coast and Coleman claimed that this award was against the manifest weight of the evidence because there was no evidence that the decedent sustained any physical injury. However, we believe there was ample evidence to sustain such an award.

At the trial, Henrici testified:

> "[When the back of the boat went down] I received a shock, like a shock you get from putting your finger in a light socket. *** I looked at Jana and Donna, and they were both very surprised. Apparently, they had also been shocked."

There was also evidence of electrical sparks "showering" down on the boat; fish in the surrounding water dying from electrocution and floating on the water; the decedent being frightened and panicked and, in an attempt to escape, diving into the water, at which time she was electrocuted and burned.

The appellate court held that Henrici's testimony, "standing alone," was insufficient to establish pain and suffering by the decedent. Such a conclusion contradicts the evidence in this case. See *Landreth v. Reed* (Tex. Civ. App. 1978), 570 S.W.2d 486, 492.

We therefore hold that the appellate court erred in concluding that the plaintiff should not have been awarded damages for decedent's pain and suffering.

## Punitive Damages

In the present case, one of the counts of the complaint was pleaded under the Survival Act (Ill. Rev. Stat. 1977, ch. 110½, par. 27—6). The jury returned a verdict

for punitive damages against Coleman based upon that count. However, after the verdict and while post-trial motions were pending, this court issued its opinion in *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324. In *Froud*, this court reaffirmed its earlier decisions that punitive damages are not recoverable under the Survival Act. The plaintiff therefore was allowed to file an amendment to the pleadings to state a cause of action for punitive damages based on *Saunders v. Schultz* (1960), 20 Ill. 2d 301. On appeal, the appellate court held that punitive damages were not recoverable under *Saunders*.

The issue before us is whether punitive damages were properly awarded in this case. In *Saunders v. Schultz,* the court held that the decedent's spouse, who had become personally liable for funeral expenses, could bring an action individually at common law to recover pecuniary losses which were not recoverable under any existing statute. The court stated:

"[W]e believe that the common law should be construed to permit the recovery of such funeral and medical expenses in an action either by the decedent's estate, or, as in the instant case where no such claim was made, by the surviving spouse." *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 310.

The *Saunders* case dealt exclusively with compensatory damages, not punitive damages. Illinois law is clear that punitive damages are not recoverable under the Survival Act. (See *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324; *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31.) Therefore, we affirm the appellate court's holding on this issue.

We are unwilling to accept the plaintiff's implied invitation to overrule these cases or to allow their holdings to be circumvented by overstretching the holding in *Saunders*. The plaintiff asks that we consider the often-repeated adage that it is cheaper to kill your victim than to leave him maimed. While we are sympathetic to his

argument, we believe it is being voiced in the wrong forum. It is the General Assembly which should be urged to pass legislation allowing the award of punitive damages in these cases, not the courts.

### Presumption of Loss of Society for Adult Child

The next issue we are asked to address is whether a presumption of loss of society should pertain to cases where the decedent has reached the age of majority.

In this case the jury was given a damage instruction which stated in part:

> "Where a decedent leaves parents the law recognizes the presumption that they sustained some substantial pecuniary loss by reason of the death. ***
>
> In determining pecuniary loss to the parents and brothers and the weight to be given to the presumption of pecuniary loss to the parents, you may consider what benefits of pecuniary value, including money, goods, society, companionship and services the decedent might have been expected to contribute to the parents and brothers had the decedent lived."

Coast and Coleman readily admit in their brief that parents of a decedent who has reached the age of majority are entitled to recover for the loss of society in Illinois, if they affirmatively prove such a loss. While there are no cases in Illinois that are dispositive of this issue, Coast and Coleman specifically stated in their brief:

> "The close and familial ties that unite the minor child living in the household of the parents, do not necessarily exist between parents and adult children. That is not to say that adult children in many instances are not 'close' to their parents, in which case, *such evidence may be adduced and the jury instructed that 'loss of society' and the valuation put thereon are compensable elements of damages* depending upon the extent and nature of the contacts. There is simply no need for a presumption ***."
> (Emphasis added.)

Although no State allows for a presumption, some States do allow parents to recover for the loss of society for an adult child. (See *Sawyer v. United States* (E.D. Va. 1978), 465 F. Supp. 282; *Riley v. California Erectors, Inc.* (1973), 36 Cal. App. 3d 29, 111 Cal. Rptr. 459; *Jones v. Carvell* (Utah 1982), 641 P.2d 105; *Butterfield v. Community Light & Power Co.* (1946), 115 Vt. 23, 49 A.2d 415; *Balmer v. Dilley* (1972), 81 Wash. 2d 367, 502 P.2d 456; Mo. Rev. Stat. sec. 537.090 (Supp. 1985-86).) In none of these cases did the court address the issue of a presumption.

However, Coast and Coleman argue, and the appellate court agreed, that the instruction given was erroneous insofar as it contained *presumptions* of loss of society.

Recently, in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, this court addressed this issue with regard to the parents of a minor child. In *Bullard,* this court noted the trend toward allowing such damages and stated:

"In Illinois, too, the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, this court quite recently unanimously held, based on a broad definition of pecuniary injury, that a widowed spouse had the right to recover damages for loss of consortium under the Wrongful Death Act. We there relied upon *Hall v. Gillins* (1958), 13 Ill. 2d 26, where the court refused to allow a common law action to recover for 'destruction of the family unit' caused by the death of the father because an adequate remedy already existed under the Wrongful Death Act. This court there stated:

'The term "pecuniary injuries" [found in section 2 of the Wrongful Death Act] has received an interpretation that is broad enough to include most of the items of damage that are claimed by plaintiffs in this case. Each plaintiff alleges deprivation of support *as well as deprivation of the companionship, guidance, advice, love and affection of the deceased.*' (Emphasis

added.) 13 Ill. 2d 26, 31.
To the same effect is *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83." *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 514.

In *Bullard*, we concluded that parents are entitled to a presumption of pecuniary injury in the loss of a minor child's society but did not decide "whether the loss-of-society presumption applies to children who have reached the age of majority." (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 517.) However, we do so today.

Coast and Coleman argue that *Bullard* should not apply, pointing out that the decedent was over 18 years of age and no longer a minor when she was killed. They contend that a parent's interest in the society and companionship of a child is less substantial when the child is an adult and not living with the parents.

However, we refuse to draw a line based solely on the age of a child. We fail to see how a presumption of loss of society suddenly disappears upon a child's 18th birthday. The return on parents' investment in their children is very real, even though it may not be in the form of money. When children are wrongfully killed, the parents' investment of money and in affection, guidance, security and love is destroyed. Society recognizes the destruction of that value, whether the child is a minor or an adult. The intent of *Bullard* was to recognize the intrinsic value of children to their parents regardless of which way financial support is flowing at death.

Since there is a presumption of loss of society for an adult child, it was proper that the jury was instructed as to this presumption in the present case.

## Jury Instructions on Proximate Cause

In this case, the circuit court did not give the jury the second paragraph of Illinois Pattern Jury Instruction (IPI), Civil, No. 12.04 (2d ed. 1971). The appellate court held that this was error. We are asked to determine whether the cir-

cuit court erred by not giving the second paragraph.

The instruction states in whole:

"More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.]"

The notes on use of this instruction state: "The second paragraph should be used only where there is evidence tending to show that the sole proximate cause of the occurrence was the conduct of a third person." In this case such a theory cannot intelligently be argued.

In the case at bar, the evidence clearly established that the decedent would not have been electrocuted *but for* the all-metal construction of the boat. Therefore, the trial judge was correct in giving only the first paragraph of the proximate cause instruction, since the second paragraph is irrelevant to this case.

## Henrici Settlement

The last issue concerns the second of these consolidated cases. In this case Henrici was named as a third-party defendant in a counterclaim seeking contribution filed by Coast and Coleman. Before trial, the plaintiff settled with Henrici for $15,000 and the city for $37,500. The court approved of the settlement, finding that it was made in "good faith." The appellate court held that, because the plaintiff's cause of action against Henrici was barred by the statute of limitations at the time the settlement was entered into, it lacked consideration and thus does not constitute a good-faith settlement as re-

quired by the Contribution Act. Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*

The Contribution Act provides that if a settlement is made in "good faith," the settling tortfeasor is discharged from all liability for contribution. (See Ill. Rev. Stat. 1983, ch. 70, pars. 302(c), (d).) This court recently expounded upon the purpose of the Contribution Act. In *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 325, this court stated:

> "As a matter of public policy the settlement of claims should be encouraged. If we were now to add limitations not expressed in the general language of the settlement instrument or in the provisions of the Contribution Act, we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement. What tortfeasor would be expected to settle with another tortfeasor when he does not know whether he remains open to claims for contribution in uncertain amounts from one with whom he has settled? Holding the parties to the language of their release has the advantage of providing certainty and thereby encouraging settlement."

Keeping this purpose in mind, we must determine whether the settlement was made in good faith. Admittedly, the plaintiff's cause of action against Henrici *could* have been barred by the statute of limitations at the time the settlement was entered into *had* such a defense been raised. However, as we stated in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 10-11, "the potential for tort liability exists until the defense is established." Since the statute had not been raised, Henrici was still potentially liable, and therefore consideration was given by the plaintiff for the settlement.

In reaching the conclusion that the settlement was entered into in good faith, we are not wearing blinders. We are mindful that the entire circumstances surrounding a settlement must be taken into account. In the case at bar, the record indicates that the trial judge was involved in the

entire settlement process. He was convinced that the settlement was entered into in good faith. Therefore, based on these facts, we disagree with the appellate court's finding that the settlement lacked good faith.

For the aforementioned reasons, we hold that collateral estoppel does not apply; that the evidence of prior accidents was properly admitted; that the introduction of evidence concerning the city's remedial acts was harmless error; that damages for pain and suffering were properly awarded; that punitive damages were improperly awarded; that there is a presumption of loss of society for an adult child; that the jury instruction given regarding proximate cause was proper; and that Henrici's settlement was made in good faith.

The appellate court is affirmed insofar as it reversed the award of punitive damages; the judgment is otherwise reversed. For the reasons stated herein, the judgment of the circuit court of Sangamon County is affirmed, except as to the award of punitive damages, which is reversed.

Along with these consolidated cases, we also considered Henrici's motion to supplement the record. The material Henrici wished to supplement relates to matters in the *Ogg* case. Said materials are not relevant to any of the issues raised in this appeal. Therefore, Henrici's motion is denied.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; motion denied.*

JUSTICE MILLER took no part in the consideration or decision of this case.

JUSTICE MORAN, concurring in part and dissenting in part:

I agree with the majority's opinion as to most of the

issues in this case. However, I cannot agree that it was proper to omit the second paragraph of Illinois Pattern Jury Instruction, Civil, No. 12.04 (2d ed. 1971) (IPI Civil No. 12.04).

The evidence was clear that the all-metal construction of the boat was one of the *causes* of decedent's electrocution, *i.e.*, decedent would not have been electrocuted but for the boat's design. Therefore, the majority concludes, the second paragraph was properly omitted. However, the second paragraph of IPI Civil No. 12.04 is to be given only when there is evidence that the conduct of a third party was the sole *proximate cause* of the plaintiff's injuries. Conduct which is not negligent cannot be a *proximate cause* of an injury even if it is a *cause* in the "but-for" sense. Although this court has never specifically addressed the issue, the appellate court has held that the second paragraph of IPI Civil No. 12.04 should be given whenever the evidence is such that the jury could find *either* (1) that the defendant's negligent conduct was not a proximate cause of the plaintiff's injuries, *or* (2) that the defendant's conduct was not negligent at all. *Schmidt v. Blackwell* (1973), 15 Ill. App. 3d 190, 195-96; *Storm v. Brown* (1973), 15 Ill. App. 3d 29, 33.

In this case defendant offered evidence which tended to show that the design of the boat, while dangerous in this situation, was not unreasonably dangerous given the standards of the industry, the possible alternative designs, and the probability that an accident such as the one here involved would occur. There was also substantial evidence that the conduct of Philip Henrici and the city of Springfield were proximate causes of decedent's death. The jury could have found that defendant was not negligent and that either Henrici's or the city of Springfield's negligence, or both, constituted the sole proximate cause of the decedent's electrocution. Therefore I agree with the appellate court that the second paragraph

of IPI Civil No. 12.04 should have been given.

JUSTICE RYAN joins in this partial concurrence and partial dissent.