# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Palacios v. Mlot, 2013 IL App (1st) 121416**

---

| | |
|---|---|
| Appellate Court Caption | WENDY PALACIOS, Plaintiff, v. GREGORY MLOT and DMD SERVICES, INC., Defendants and Third-Party Plaintiffs-Appellants (Michael Dervin, Defendant and Third-Party Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1416 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | June 21, 2013<br><br>July 25, 2013<br>August 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a vehicular collision that occurred when the van in which plaintiff was riding was struck from behind by defendant's truck, the trial court properly dismissed defendants' third-party complaint for contribution against the driver of the van based on the settlement agreement between plaintiff and the driver of the van, notwithstanding defendants' contention that the settlement agreement did not satisfy the good-faith requirements of the Contribution Act, since the trial court did not abuse its discretion in finding that the agreement was made in good faith, regardless of defendants' contentions that plaintiff voluntarily dismissed the van driver from the suit less than two weeks after serving him and that the settlement placed a disproportionate portion of the liability on defendants. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 10-L-64007, 10-L-7732; the Hon. Drella C. Savage, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Wiedner & McAuliffe, Ltd., of Chicago (Richard J. Leamy, Jr., Robert H. Fredian, and John E. Bauman, of counsel), for appellants. |
| | Bruce Farrel Dorn & Associates, of Chicago (Ellen J. O'Rourke and Richard J. Aronson, of counsel), for appellee. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Justices McBride and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendants and third-party plaintiffs, Gregory M. Mlot and DMD Services, Inc., appeal the trial court's dismissal of their third-party complaint for contribution against third-party defendant, Michael S. Dervin. The court had found good faith with respect to Dervin's settlement agreement with plaintiff, Wendy Palacios, pursuant to the Illinois Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 *et seq.* (West 2008)). On appeal, defendants argue the trial court abused its discretion in finding that the settlement agreement between Palacios and Dervin was made in good faith. We affirm.

¶ 2                        BACKGROUND

¶ 3     Although the parties dispute the facts in this case, the instant appeal arises out of a vehicle collision that occurred on July 31, 2008. Dervin testified in his deposition that he was driving his Chevrolet Astro van with Palacios as a passenger on Interstate 190 near Rosemont, Illinois, at approximately 4:45 or 5 p.m. that day when the accident occurred. According to Dervin, the traffic was heavy and "stop and go" at the time. Their vehicle was in the left-most lane when it was struck from behind by a truck driven by Mlot. Palacios and Dervin testified that the impact pushed their van into the vehicle in front of them, which was a Jeep Liberty driven by Lavita G. Gayle. Palacios and Dervin testified that Mlot admitted at the scene that the accident was his fault. Mlot testified in his deposition that his Ford F-150 truck came into contact with Dervin's van, but he maintained that Dervin's van first hit the Jeep in front of it.

¶ 4     Following the July 2008 vehicle accident, Palacios filed a personal injury action on July 2, 2010, against Mlot, DMD Services, and Dervin. Palacios asserted that Mlot, individually and as an agent of DMD Services, negligently caused his vehicle to collide with the rear of the vehicle in which Palacios was a passenger, causing her severe and permanent injuries which resulted in medical expenses, lost wages, and pain and suffering. Palacios further

asserted that Dervin negligently operated the vehicle in which Palacios was a passenger, causing it to collide with the vehicle operated by Mlot, resulting in injuries, expenses, lost wages, and pain and suffering.

¶ 5     On June 25, 2010, Dervin also filed a personal injury action against Mlot and DMD Services, alleging that Mlot negligently caused his truck to rear-end Dervin's vehicle, which caused Dervin severe, permanent physical and psychological injuries, resulting in pain and suffering, lost wages, and medical expenses. Dervin asserted that DMD Services was liable through agency.[1] Defendants denied Dervin's allegations in his complaint and, in an amended answer, raised as an affirmative defense Dervin's alleged contributory negligence in operating his vehicle.

¶ 6     Palacios subsequently moved to dismiss Dervin without prejudice pursuant to section 2-1009 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-1009 (West 2010)). The trial court granted the motion on August 3, 2010.

¶ 7     On November 9, 2010, Mlot brought a third-party complaint for contribution against Dervin pursuant to the Contribution Act, asserting that Dervin negligently caused his vehicle to strike the vehicle in front of him and come to a sudden stop, which then caused Mlot's vehicle to strike Dervin's vehicle.

¶ 8     On October 31, 2011, Dervin moved for a good-faith finding of settlement with Palacios pursuant to the Contribution Act and to dismiss with prejudice the third-party action against him. Dervin indicated that he reached a settlement agreement with Palacios for $3,000 under the Contribution Act and that the settlement was the result of arm's-length negotiation. Dervin asserted that (1) he was stopped on the expressway at the time of the collision; (2) Palacios testified that Dervin was stopped and that there was only one impact; and (3) the police report, attached to his motion, indicated that the police officer who later investigated the accident would testify to a past recollection recorded that Mlot failed to reduce speed and admitted fault for rear-ending Dervin's vehicle.[2] In the narrative section of the police report attached to Dervin's motion, the officer wrote that "The driver of Unit 1 [Mlot] stated in summary, traffic was stop [and] go, and he failed to reduce speed to avoid an accident. The driver o[f] unit 1 admitted fault of rear-ending unit 2 [Dervin]. All information was provided by unit 1 and unit 2."

¶ 9     Defendants filed a written objection to Dervin's motion for a good-faith finding on December 6, 2011. Defendants argued that Dervin and Palacios failed to make a preliminary showing of good faith. They asserted that the settlement was collusive given that Palacios and Dervin were coworkers who rode to work together every other month, Palacios voluntarily dismissed Dervin one month after filing suit and less than two weeks after Dervin was served with the lawsuit, and at the time of the agreement, Palacios could no longer reinstitute proceedings against Dervin because one year had elapsed since the voluntary

---

[1]The two cases were subsequently consolidated.

[2]Although police were called after the accident, they never came to the scene. Dervin later filed a police report and the investigating officer spoke with Mlot by telephone.

dismissal and the statute of limitations had expired. Defendants also argued that the settlement shifted a disproportionate share of the liability on them because Dervin was the sole proximate cause of the accident and Palacios's disclosed medical costs were $24,411.04. Defendants attached several supporting exhibits, including Dervin's motion and the depositions of Dervin, Mlot, Palacios, and Gayle. Defendants cited Palacios's deposition testimony that her body first went forward upon initial impact and then went backward; Mlot's deposition testimony that he did not see any brake lights on Dervin's vehicle; and Gayle's testimony that she felt two impacts, with the first impact being harder.

¶ 10   In response, Dervin argued that defendants failed to meet their burden of showing lack of good faith by a preponderance of the evidence. Dervin asserted that the totality of the circumstances supported a good-faith finding, and there was no evidence of unfair dealing, collusion, or wrongful conduct. Dervin argued that Mlot made several admissions in his deposition testimony and to the officer who prepared the police report: (1) Mlot conceded that he did not observe Dervin operating his van in an unusual way; (2) he conceded that he only thought it was a "possibility" that Dervin's van first struck the rear of Gayle's vehicle; (3) he did not hear an impact; (4) he did not recall whether Dervin's van was stopped at the time; and (5) he conceded that he told the officer how the crash occurred. Dervin pointed out that there was no mention of a third car in the police report. Dervin asserted that Palacios voluntarily dismissed him from her lawsuit "[a]fter initial documents were reviewed" and "it became clear that Mr. Mlot took full responsibility for the accident." Dervin argued that it was not collusive for Palacios to dismiss him from the lawsuit given Mlot's admissions and the possibility that Palacios could have been liable for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013) (pleadings not well grounded in fact or law) had she kept Dervin in the lawsuit. Defendant also asserted that, based on the deposition testimony and Palacios's expenses, Dervin offered Palacios $3,000 in good faith. He noted that Mlot would be able to present to the jury any defenses he had against Dervin in Dervin's lawsuit against him.

¶ 11   In answer to Dervin's response, defendants maintained that the deposition testimony suggested that Dervin's vehicle hit Gayle's vehicle before Mlot's vehicle rear-ended Dervin's vehicle. Defendants disputed the narrative in the police report, arguing that the officer of the report was never deposed and there was no foundation to use the report as a past recollection recorded. Defendants reiterated that the settlement did not adequately consider Dervin's potential liability, collusion could be inferred based on the evidence, and Dervin did not offer any evidence that Palacios dismissed him after reviewing "initial documents."

¶ 12   On February 24, 2012, the trial court held a hearing on Dervin's motion for a good-faith finding. The trial court considered the probability of recovery, Dervin's potential liability, and the totality of the circumstances. The trial court found no evidence of collusion or a close relationship between the settling parties. It remarked that the deposition testimony of Dervin and Palacios indicated that they occasionally rode together for work and were not social friends. It also distinguished the present case from the case relied on by defendants, *Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556 (1995), *abrogated on other grounds by Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003).

¶ 13   The trial court further concluded that, considering the deposition testimony, it "cannot

find that Dervin's culpability is relatively large in the case." While acknowledging Mlot's theory, the trial court did not believe that the evidence supported it, and cited deposition testimony by Palacios and Dervin and the police report. The trial court observed that Mlot's testimony was not favorable and he "testified that he told the police officer how the crash took place." The trial court found that the $3,000 settlement amount was fair and reasonable considering the probability of recovery, the defenses raised, and Dervin's potential liability.

¶ 14    The trial court also considered Dervin's explanation for why Palacios voluntarily dismissed him to be plausible, given the low amount of liability and the possibility of sanctions. Thus, the trial court held that, under the totality of the circumstances, the settlement agreement was entered into in good faith and defendants had failed to prove otherwise by a preponderance of the evidence.

¶ 15    On April 12, 2012, the trial court denied defendants' motion for reconsideration. It granted their request for the addition of Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) language with respect to its February 24, 2012, order, holding that there was no just reason for delaying enforcement or appeal or both of its order. On May 21, 2012, defendants filed a notice of appeal before this court.

¶ 16                               ANALYSIS

¶ 17    On appeal, defendants argue that the settlement did not satisfy the good-faith requirements under the Contribution Act. Defendants contend that the settlement was the product of collusion between Palacios and Dervin, the settlement failed to consider Dervin's potential liability, and the trial court improperly considered the police report in finding good faith.

¶ 18    We review for an abuse of discretion the trial court's finding of good faith. *Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003). "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008). This court gives due deference to the trial court's "familiarity with and observation of the course of the proceedings prior to the execution of the settlement agreement." *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 44 (1992).

¶ 19    The Contribution Act "creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' (740 ILCS 100/1, 2(a) (West 1996)), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability (740 ILCS 100/2(b) (West 1996))." *Johnson*, 203 Ill. 2d at 128. In relevant portion, the Act provides:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged

-5-

from all liability for any contribution to any other tortfeasor.

(e) A tortfeasor who settles with a claimant pursuant to paragraph (c) is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." 740 ILCS 100/2(c), (d), (e) (West 2008).

¶ 20 "The 'good faith' of a settlement is the only limitation which the [Contribution Act] places on the right to settle and it is the good-faith nature of a settlement that extinguishes the contribution liability of the settling torfeasor." *Johnson*, 203 Ill. 2d at 128. The term "good faith," however, is not defined. *Id.* Initially, the settling parties must make a preliminary showing of good faith, and at a minimum, must demonstrate "the existence of a legally valid settlement agreement." *Id.* at 132. "Where there is a resolution of a claim by virtue of a settlement, and the terms of the settlement are made known to the court, there has been a preliminary showing of good faith which creates a presumption of validity." *Jessee v. Amoco Oil Co.*, 230 Ill. App. 3d 337, 346 (1992). If a settling party demonstrates that the settlement is supported by consideration, the settlement "is considered *prima facie* in good faith" under the Contribution Act. *McDermott*, 240 Ill. App. 3d at 44.

¶ 21 Once the court determines that a preliminary showing of good faith is made, the objecting party must prove the absence of good faith by a preponderance of the evidence. *Johnson*, 203 Ill. 2d at 132. This standard serves the "two important public policies" of the Contribution Act: "encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Id*. at 133.

¶ 22 Although the courts have not adopted a precise formula in assessing whether good faith exists, "[a] settlement will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud," or if the settlement conflicts with or is inconsistent with the terms and policies of the Contribution Act. *Johnson*, 203 Ill. 2d at 134. Although no single factor is determinative, considerations also may include whether the settlement amount was reasonable and fair, whether the parties had a close personal relationship, whether the plaintiff sued the settling party, or whether information about the settlement agreement was concealed. *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 633 (2000). Ultimately, whether a settlement agreement satisfies the good-faith requirement of the Contribution Act is "a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances." *Johnson,* 203 Ill. 2d at 135. This "totality-of-the-circumstances" approach encourages the peaceful settlement of claims while protecting against wrongful conduct or unfair dealing. *In re Guardianship of Babb*, 162 Ill. 2d 153, 162 (1994).

¶ 23 On appeal, defendants analogize the present case to the circumstances in *Warsing*, 271 Ill. App. 3d 556. In *Warsing*, the defendant/third-party plaintiff appealed the dismissal of its third-party contribution complaint against the third-party defendant after the trial court determined that the settlement between the plaintiff and the third-party defendant was in good faith. *Id.* at 557. The plaintiff's decedent was killed when the defendant/third-party plaintiff's forklift, driven by the third-party defendant, rolled off the lift of a truck and fell on the decedent. *Id.* at 557-58. The plaintiff sued the defendant/third-party plaintiff in negligence, and the defendant/third-party plaintiff then filed a complaint for contribution

against the third-party defendant. *Id.* The plaintiff and the third-party defendant thereafter entered into a settlement agreement of $1,000. *Id.*

¶ 24　The *Warsing* court held that the totality of the circumstances indicated a lack of good faith. *Warsing*, 271 Ill. App. 3d at 561. The court emphasized the close personal relationship of the settling parties because their families were close friends, and the fact that the plaintiff, without explanation, never sued the third-party defendant directly despite the fact that he was driving the forklift at the time of the accident. *Id.* at 559-60. The court further cited the fact that the third-party defendant paid only $1,000. *Id.* at 561. While this small amount would be insufficient standing alone to establish bad faith, the court coupled it with other relevant factors. *Id.* The court indicated that the amount was disproportionate in a wrongful death claim if, as the defendant/third-party plaintiff asserted, the third-party defendant was the primary cause of the accident. *Id.* The court observed that the deposition testimony supported the defendant/third-party plaintiff's assertion regarding fault. *Id.*

¶ 25　In the present case, the evidence did not support that the settling parties had a close personal relationship similar to that in *Warsing*. The depositions of Palacios and Dervin demonstrated that they were coworkers who occasionally shared a ride for work purposes. Palacios testified that they were work acquaintances and she rode with Dervin about once every two months. Dervin testified that they did not frequently work together and they were not social friends. There was no evidence of a close family relationship or friendship. See also *Wasmund v. Metropolitan Sanitary District of Greater Chicago*, 135 Ill. App. 3d 926 (1985), *abrogated on other grounds by Johnson*, 203 Ill. 2d 121 (settlement was in good faith even though the settling parties were friends and not married at the time of the accident or the settlement, but later married).

¶ 26　In further distinction from *Warsing*, Palacios did in fact bring a direct lawsuit for negligence against Dervin. Although the complaint against him was eventually voluntarily dismissed, it was without prejudice.

¶ 27　In addition, the trial court found Dervin's proffered explanation for why he was voluntarily dismissed to be plausible given the evidence and the possibility of sanctions under Illinois Supreme Court Rule 137 (eff. Jan. 4, 2013) for filing pleadings not well grounded in fact or law. Although defendants argue that Dervin did not show that he actually threatened Palacios with sanctions, a party should not continue to pursue an action in violation of the rule merely because the other party has yet to actually threaten sanctions.

¶ 28　Defendants nonetheless argue that, as additional evidence of collusion, Palacios settled with Dervin after the expiration of the time in which she could refile her lawsuit in the underlying action against him and the statute of limitations had run. 735 ILCS 5/13-202, 13-217 (West 2008).[3]

¶ 29　In *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 121 (1986), our supreme court

---

[3]A personal injury action must be "commenced within 2 years next after the cause of action accrued." 735 ILCS 5/13-202 (West 2008). Section 13-217 of the Code (735 ILCS 5/13-217 (West 2002)) allows for a plaintiff who voluntarily dismissed an action to "commence a new action within one year or within the remaining period of limitation, whichever is greater."

addressed a situation where, at the time the settling parties entered into the agreement, the plaintiff's potential tort claim against the settling party could have been barred by the applicable statute of limitations. Before trial, although the plaintiff never sued the third-party defendant directly for negligence, the plaintiff entered into a settlement agreement with the third-party defendant, who had been sued by the defendants for contribution. *Id.* at 111-12. The trial court found that the settlement agreement was made in good faith and approved the settlement. *Id.* The Appellate Court of Illinois, Fourth District, held that "because the plaintiff's cause of action against [the third-party defendant] was barred by the statute of limitations at the time the settlement was entered into, it lacked consideration and thus does not constitute a good-faith settlement as required" under the Contribution Act. *Id.* at 121-22. The Illinois Supreme Court reversed:

> "Admittedly, the plaintiff's cause of action against [the third-party defendant] could have been barred by the statute of limitations at the time the settlement was entered into had such a defense been raised. However, as we stated in *Doyle v. Rhodes*[, 101 Ill. 2d 1, 10-11 (1984)], 'the potential for tort liability exists until the defense is established.' Since the statute had not been raised, [the third-party defendant] was still potentially liable, and therefore consideration was given by the plaintiff for the settlement." (Emphasis omitted.) *Id*. at 122.

The court noted that it was "not wearing blinders" in reaching its conclusion, and in considering the totality of the circumstances, the court observed that the trial court was involved in the settlement process and was "convinced that the settlement was entered into in good faith." *Id.* at 122-23.

¶ 30    Similar to the circumstances in *Ballweg*, the time period to refile the negligence action against Dervin had potentially expired at the time the parties settled. However, on the record before this court, such a defense had not been raised or established in the trial court. Accordingly, "the potential for tort liability exist[ed] until the defense [was] established" (internal quotation marks omitted) and the fact that Dervin may no longer have been liable to Palacios in tort would not prevent their settlement agreement from being in good faith. *Ballweg*, 114 Ill. 2d at 122.

¶ 31    Moreover, the fact that the settlement agreement would be "advantageous to a party is not necessarily an indication of bad faith." *Johnson*, 203 Ill. 2d at 138-39 (the fact that the plaintiffs' settlement improved their chances of defeating nonsettling party's *forum non conveniens* motion was not evidence of collusion or wrongdoing). Rather, this would be merely one factor for a trial court to consider when assessing the good faith of a settlement under the totality of the circumstances. *Id.* at 139. See also *Jessee*, 230 Ill. App. 3d at 347 (bad faith not necessarily "indicated where a settlement has been made simply to avoid third-party liability"); *McDermott*, 240 Ill. App. 3d at 47 ("It is not a lack of good faith for a defendant to settle with the plaintiff even though one purpose may be to purchase protection against a claim for contribution.").

¶ 32    Defendants additionally argue that the settlement agreement failed to account for Dervin's potential liability. The settlement amount must be considered in light of "the probability of recovery, the defenses raised, and the settling party's potential legal liability."

-8-

*Johnson*, 203 Ill. 2d at 137. In *Johnson*, the fact that the plaintiffs sought millions of dollars in damages but the settlement amounts were $1,000 per plaintiff did not indicate bad faith. *Id.* A disparity between the amount of the settlement and the amount of damages sought by the plaintiff "is not an accurate measure of the good faith of a settlement." *Id.* See also *McDermott*, 240 Ill. App. 3d at 46 ("our courts have declined to utilize a 'proportionality' or 'reasonable range' test in order to determine whether a defendant's settlement with a plaintiff" was in good faith); *Jessee*, 230 Ill. App. 3d at 346-47 (any resulting disparity in "the ultimate cost does not signal bad faith; the mere fact that a settlement agreement may have been advantageous to a party is not necessarily an indicium of bad faith"); *Pritchard v. SwedishAmerican Hospital*, 199 Ill. App. 3d 990, 998 (1990), *abrogated on other grounds by Johnson*, 203 Ill. 2d 121 ("The mere fact that an injured party's actual damages exceed the amount of the settlement does not prove that the settlement was unreasonable.").

¶ 33    In the present case, the evidence did not support that Dervin was the primary or substantial cause of the accident. Palacios testified that they were moving very slowly in stop-and-go traffic right before the initial impact occurred, when she "felt a very aggressive impact to the vehicle that I was in and then it pushed us into the vehicle that was in front of us." The vehicle she was in was about three to four feet from the vehicle in front of them at the time the collision occurred. She believed her body went forward and then backward. After the collision, she heard Mlot apologize to Dervin and state, "I must have dazed out. I was talking on the cell phone. I must have accidentally pressed on the accelerator instead of the brake." She stated that Dervin did not hit the vehicle in front of them before they were hit from behind, and the impact from behind was more forceful than the impact to the front of the vehicle.

¶ 34    Dervin similarly testified that Mlot hit their vehicle forcefully from behind, causing them to impact the vehicle in front of them, and "bounced" them around like an "accordion." He also testified that after the accident, Mlot stated that he was sorry and that he "must have pushed the accelerator instead of the brake." As additional evidence of Mlot's liability, the narrative section of the police report indicated that Mlot told the investigating officer that "The driver of Unit 1 [Mlot] stated in summary, traffic was stop [and] go, and he failed to reduce speed to avoid an accident. The driver o[f] unit 1 admitted fault of rear-ending unit 2 [Dervin]. All information was provided by unit 1 and unit 2."

¶ 35    Mlot testified that Dervin's vehicle first hit the car in front of it, but he admitted that he assumed this and did not know for sure. He did not see brake lights or hear screeching tires. He explained that, later on, he thought that it was possible that Dervin first hit the car in front and then "backed into my truck." He testified that he did not apologize or state that he hit the accelerator while on his cellular telephone. He did not recall whether he told Dervin that he thought Dervin hit the vehicle in front first. Mlot indicated that Dervin would not let him leave the scene of the accident until he "signed something admitting that I hit him," so Mlot signed the paper. Mlot testified that he later spoke with a police officer over the telephone about the accident, but he believed he told him that Dervin struck the vehicle in front first. Mlot did not recall whether the officer read the narrative portion of the report to him over the telephone, but he conceded that he told the officer how the crash occurred.

¶ 36    Gayle testified that her recollection was "fuzzy." At one point, she testified that there was

only one impact. But she also testified that there was one major impact and then a "bump" afterward. She believed that the vehicle behind her was first hit from behind before it collided with her vehicle, but she indicated that this information came from something someone said to her. She also testified that she could be confusing the accident with a different, unrelated one.

¶ 37 Defendants also argue that the trial court improperly considered the police report. "Generally, statements contained in police reports are considered inadmissible hearsay." *Rodriguez v. Frankie's Beef/Pasta & Catering*, 2012 IL App (1st) 113155, ¶ 14. Although the trial court seemed to suggest that defendants proffered the police report as evidence, the record reflects that the police report was actually attached to Dervin's motion for a good-faith finding. Defendants included Dervin's motion as an exhibit to their response; thus, the police report was part of their response only because Dervin had attached it to his motion. Nevertheless, the police report was not being admitted as evidence at trial or as part of the evidence to be considered in a motion for summary judgment. Essentially the same evidence was presented through the deposition testimony of Palacios and Dervin, and Mlot was questioned about his statements in the report. Mlot's statements to the police officer and his failure to make certain statements would be independently admissible as nonhearsay admissions through the testimony of the police officer pursuant to Illinois Rule of Evidence 801(d)(2) (Ill. R. Evid. 801(d)(2) (eff. Jan 1, 2011)). Regardless of its admissibility, it is clear from the trial court's statements that it considered the deposition testimony and arguments of the attorneys in making its ruling.

¶ 38 After reviewing the trial court's reasoning and the arguments and evidence presented by the parties, we conclude that the trial court did not abuse its discretion in finding that the settling parties' agreement was in good faith. *Favia*, 381 Ill. App. 3d at 815. Nothing suggests that the trial court's approval of the settlement was "arbitrary, fanciful, or unreasonable." *Id.* The trial court reviewed the pleadings, arguments, and evidence, and considered the totality of the circumstances, including defendants' assertion of collusion, the probability of recovery, Dervin's potential liability, and the settlement amount. Under the circumstances presented in this case, the settlement amount did not indicate bad faith. There was no evidence of collusion or wrongful conduct. Defendants have failed to sustain their burden of showing lack of bad faith by a preponderance of the evidence.

¶ 39                                          CONCLUSION

¶ 40 For the reasons stated above, we affirm the trial court's finding of good faith with respect to the settlement agreement and its dismissal of the third-party complaint against Dervin.

¶ 41 Affirmed.