2021 IL App (1st) 192535-U

Nos. 1-19-2535 & 1-20-0730 (cons.)

Order filed June 3, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MIKHAIL SORKIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant and Cross-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 6250 |
| | ) | |
| CHICAGO TRANS MANAGEMENT, LLC, RAUL | ) | |
| PARIKH, and SVETLANA ZHUNDRIKOVA, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees and Cross-Appellants. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justice Martin concurred in the judgment.
Presiding Justice Gordon concurred in part and dissented in part.

**ORDER**

¶ 1   *Held*:   Where plaintiff's amended complaint sought to collect an alleged unpaid debt from defendants, defendants were entitled to dismissal of the amended complaint with prejudice because they met their burden of presenting an affirmative matter defeating plaintiff's claim, *i.e.*, full satisfaction of the alleged indebtedness, by the material facts averred in their affidavit and supporting documents and plaintiff failed to carry the shifted burden of going forward by failing to contest or refute those material facts. Defendants, however, were not entitled to attorney fees and costs under the terms of their operating agreement with plaintiff.

¶ 2    Plaintiff Mikhail Sorkin sued defendants, Chicago Trans Management, LLC, (Chicago Trans), Raul Parikh and Svetlana Zhundrikova, to collect on an alleged unpaid loan. Defendants moved to dismiss the amended complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2018)), arguing that the loan was repaid in full, with interest. Plaintiff, however, argued that the loan at issue remained unpaid and defendants' payments went toward other debts they owed him.

¶ 3    The trial court granted defendants' 2-619 motion to dismiss, ruling that the evidence established that all plaintiff's loans to defendants were paid and satisfied. The trial court also denied defendants' request for an award of attorney fees and costs under the terms of their contract with plaintiff.

¶ 4    On appeal, plaintiff argues that the trial court erroneously granted defendants' motion to dismiss because a genuine issue of material fact precluded the entry of summary judgment where plaintiff's counter-affidavit, which claimed that defendants still owed him money, conflicted with the defendants' affidavit supporting their claim of full payment.

¶ 5    On cross-appeal, defendants argue that they are entitled to recover attorney fees and costs from plaintiff under the terms of the parties' operating agreement because this dispute arose from and was in connection with the operating agreement.

¶ 6    For the reasons that follow, we affirm the judgment of the circuit court.[1]

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7                                    I. BACKGROUND

¶ 8      According to the record, plaintiff Michael Sorkin and defendants Raul Parikh and Svetlana Zhundrikova constituted the three members of defendant Chicago Trans. On May 1, 2016, Sorkin executed a promissory note (Note) with defendant Chicago Trans, under which Sorkin loaned Chicago Trans $250,000 (the Debt). Furthermore, Parikh and Zhundrikova executed individual guarantees for the payment of the sums due and payable under the Note.

¶ 9      In June 2018, Sorkin sued Chicago Trans, Parikh and Zhundrikova, seeking relief for the alleged nonpayment of and default under the Note entered into by Chicago Trans and personally guaranteed by Parikh and Zhundrikova. Sorkin alleged the defendants had made no payments toward the Debt as of the date he filed this lawsuit.

¶ 10      In September 2018, defendants moved the court to dismiss the complaint under section 2-619 of the Code, arguing that the entire amount alleged as outstanding had been paid in full (totaling $266,069.73) as of December 2017. In support of this argument, defendants included documents evidencing proof of payments and an affidavit from Zhundrikova.

¶ 11      In his response, Sorkin argued that, although he did receive the payments consistent with and demonstrated in defendants' exhibits and affidavit to their motion to dismiss, he had the option to apply the money he received from defendants to various other debts they owed him. He alleged that the entire Debt remained outstanding and averred in his counter-affidavit that "[w]hile some payments made by Chicago Trans were applied to those oral loans, those loans have not been fully retired and none of the payments have been attributed to the Note."

¶ 12    On December 10, 2018, the trial court dismissed the complaint without prejudice, finding that Sorkin improperly sought to survive the motion through a theory of recovery that he had not alleged in his complaint. The court allowed Sorkin to amend his complaint.

¶ 13    Sorkin's amended complaint, which is the subject of this appeal, again alleged nonpayment of the Debt owed under the Note and included new allegations about a series of oral loans that he made to Chicago Trans and remained outstanding. Sorkin conceded that defendants made incremental payments totaling $266,069.73, alleged that they never instructed which loan the payments were to be applied, and alleged that there existed an outstanding balance for the entirety of the Debt and an additional $421,729.42. Sorkin again alleged that Chicago Trans failed to pay any sum towards the Debt. Sorkin sought judgment in the amount of the Debt, plus interest, the outstanding balance of various other oral loans, and a judgment of attorney fees against Parikh and Zhundrikova.

¶ 14    In April 2019, defendants filed the motion to dismiss at issue in this appeal. This motion included as exhibits receipts to show proof of payments to Sorkin, a demonstrative chart detailing each payment and another affidavit from Zhundrikova, which was supported by the other exhibits. The exhibits collectively demonstrated that defendants made 54 separate payments to Sorkin totaling $1,231,673.59 from July 7, 2016, through December 14, 2018. Zhundrikova's affidavit explained that the exhibits included a handwritten note from Sorkin's wife wherein she, on behalf of Sorkin as his agent, combined the then-outstanding balance on the Note ($184,997.53) with an amount outstanding on a separate oral loan ($166,643.21) for a total debt of $287,799.15, payable over two years at 6% interest. She also provided instructions for defendants to send the payments

to a Chase bank account ending in No. 3738. Following those instructions, defendants made payments to satisfy the balance of both loans, as consolidated. Zhundrikova's affidavit explained that the amended complaint improperly included an allegation of a separate loan in the amount of $287,799.15, which was the result of Sorkin misidentifying the consolidation of the Note and oral loan as a new loan.

¶ 15    In his response, Sorkin argued that defendants could not rely on subsections 2-619(a)(6) and (a)(9) of the Code (735 ILCS 5/2-619(a)(6), (a)(9) (West 2018)), to dismiss his amended complaint. His response included his counter-affidavit, which did not contest his receipt of any of the payments demonstrated in Zhundrikova's affidavit and the other exhibits of defendants' motion to dismiss. Instead, Sorkin averred that only defendants' payments in the amount of $7,605.48 between July 7, 2016, and November 28, 2017, were attributable to their loans. He averred, without attaching any documents to support his counter-affidavit, that another debt existed, and he had applied defendants' payments to this other debt. Sorkin argued that defendants improperly set forth a "Not True" motion and thus failed to present an affirmative matter consistent with section 2-619.

¶ 16    In their reply, defendants argued that Sorkin's affidavit failed to refute, and therefore conceded, the following facts averred in Zhundrikova's affidavit that (1) during the summer of 2017, payments on the Note were combined with payments on an oral loan agreement between Sorkin and Chicago Trans; (2) at the time the payments on the Note and oral loan were combined, the remaining balances on the Note and oral loan were $184,997.53 and 166,643.21, respectively; (3) on July 24, 2017, Sorkin's wife, Natasha Sorkin, instructed defendants on her husband's behalf that the remaining combined balance of the Note and oral loan—then $287,799.15—could be

repaid for two years at an annual interest rate of 6% and all subsequent payments should be made to the Chase bank account ending in No. 3738; (4) the $287,799.15 figure handwritten by Natasha Sorkin in the exhibit did not represent a separate loan agreement because Chicago Trans did not receive $287,799.15 from Sorkin on or about July 21 through 24, 2017, and the amount represented the total combined remaining indebtedness under the Note and oral agreement; (5) from August 9 through December 14, 2017, Chicago Trans paid Sorkin at Chase bank account No. 3738 to fully repay the $287,799.15 total combined debt, calculated by combining the oral loan agreement and the Note; and (6) Sorkin never objected to Chicago Trans combining the payments of the Debt and the oral loan, and never refused or returned any payments made by Chicago Trans in that manner.

¶ 17    Defendants also argued that Sorkin's affidavit should be stricken for failing to comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) because he failed to attach documents to support his averments, his affidavit was self-serving and conclusory in nature, and his affidavit failed to set forth facts with the requisite particularity. Defendants also argued that Sorkin's affidavit failed to include the necessary supporting documents and the substance of his allegations conflicted with his underlying amended complaint. Specifically, defendants' motion to dismiss demonstrated that they made 3 payments totaling $219,046.11 after November 28, 2017, in addition to 21 payments in the amount of $7,605.48 (totaling $159,715.08) between July 7, 2016, and November 28, 2018. Although more than these payments went towards the loans, Sorkin alleged in his amended complaint that only $266,069.73 was applied to the loans (including the Note), which conflicted with the sworn statement in his affidavit that a total $378,761.19 (combining $219,046.11 and $159,715.08) was applied to all of the loans.

¶ 18    Finally, defendants argued that neither Parikh nor Zhundrikova could be sued in their individual capacities pursuant to section 10-10 of Limited Liability Company Act (805 ILCS 180/10-10 (West 2018)), which prohibits a member's personal liability for the debt, obligation or liability of the limited liability company solely by reason of being a member or manager, because Sorkin had conceded the allegations in Zhundrikova's affidavit concerning the order by which the parties executed their operating agreement and the Note.

¶ 19    On July 26, 2019, the trial court entered a written order that granted defendants' motion to dismiss Sorkin's amended complaint with prejudice. The trial court's order, in pertinent part, ruled that the dismissal of Sorkin's amended complaint was proper based on the affirmative matter of full payment and satisfaction of the Debt and oral loan as demonstrated through Zhundrikova's affidavit and the accompanying exhibits establishing defendants' payments.

¶ 20    On August 21, 2019, Sorkin filed a motion for reconsideration, again arguing that (1) defendants' motion to dismiss and Zhundrikova's affidavit merely contested the allegations of his amended complaint, and (2) the trial court failed to consider Sorkin's claims for interest and an additional outstanding debt of $300,000, which he raised for the first time in his counter-affidavit in response to defendants' motion to dismiss. Sorkin also argued that the trial court improperly determined in the context of a summary judgment motion that Zhundrikova's affidavit was more credible than his.

¶ 21    In their response, defendants argued that Sorkin failed to present any argument or authority that had not already been decided by the trial court, the trial court properly exercised its discretion consistent with section 2-619 of the Code when it considered the affidavits and evidence in ruling

on the motion to dismiss, and Sorkin could not wait until after the trial court dismissed the case to seek an evidentiary hearing to present evidence that he failed to include as an exhibit to any pleading or response to defendants' motion to dismiss.

¶ 22    On November 15, 2019, the trial court entered a written order denying Sorkin's motion to reconsider. The trial court stated that (1) Sorkin failed to allege that an additional $300,000 was in any way part of a loan amount that Chicago Trans was required to pay, (2) the court had conducted a thorough review of the amended complaint and supporting evidence and confirmed the chronology of the loans and the various payments Chicago Trans made to Sorkin, (3) the court's calculations confirmed that Chicago Trans completely paid the loans provided by Sorkin and exceeded that amount by $233,830.33, and (4) Sorkin chose not to refute in his counter-affidavit certain testimony contained in Zhundrikova's affidavit. The trial court concluded that Zhundrikova's affidavit established defendants' full payment of Sorkin's loans, Sorkin failed to provide any evidence in his amended complaint upon which the court could find that he was entitled to unpaid interest, and an excess of $233,803.33 was calculated as being paid from the defendants to Sorkin.

¶ 23    Sorkin timely appealed.

¶ 24                                    II. ANALYSIS

¶ 25                          A. Section 2-619 Motion to Dismiss

¶ 26    The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The moving party admits the legal sufficiency of the complaint, all well-pleaded facts

and all reasonable inferences therefrom, but asserts an affirmative defense or other matter to defeat the plaintiff's claim. *Id.* The court views the pleadings and any supporting documentary evidence in the light most favorable to the nonmoving party. *Id.* at 367-68. This court reviews *de novo* a dismissal under section 2-619 of the Code. *Id.* at 368; see also *Thomas v. Weatherguard Construction Company, Inc.*, 2015 IL App (1st) 123470, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform). Dismissal of a complaint under section 2-619 is appropriate only if the plaintiff can prove no set of facts that would support a cause of action. *In re Estate of Boyar*, 2013 IL 113655, ¶ 27.

¶ 27    Here, the motion to dismiss was brought under subsections (a)(6) and (a)(9) of section 2-619. Section 2-619(a)(6) allows for the involuntary dismissal of a claim when the claim set forth in the plaintiff's pleading has been released, satisfied of record or discharged in bankruptcy. 735 ILCS 5/2-619(a)(6) (West 2018); *Badette v. Rodriguez*, 2014 IL App (1st) 133004, ¶ 16. Section 2-619(a)(9) provides for dismissal on the ground that a claim asserted is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018); *Holubek v. City of Chicago*, 146 Ill. App. 3d 815, 817 (1986). An affirmative matter is "something in the nature of a defense that negates the alleged cause of action completely or refutes a crucial conclusion of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Holubek*, 146 Ill. App. 3d at 817. The affirmative matter must be either apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). If the affirmative matter is merely evidence upon which a defendant expects to contest an ultimate fact

stated in the complaint, a section 2-619 motion to dismiss should not be used. *Hayna v. Arby's, Inc.*, 99 Ill. App. 3d 700, 710 (1981).

¶ 28    "If a defendant satisfies its initial burden of presenting affirmative matter defeating a plaintiff's complaint, the burden then shifts to the plaintiff to show that the asserted defense is unfounded or leaves unresolved issues of material fact as to an essential element." *Badette*, 2014 IL App (1st) 133004, ¶ 16. If the plaintiff fails to carry the shifted burden of going forward, the complaint will be dismissed. *Epstein*, 178 Ill. 2d at 383.

¶ 29    Here, defendants supported their argument that an affirmative matter defeated Sorkin's claim with Zhundrikova's affidavit and the handwritten note from Sorkin's wife, which explained that the amounts left on the Debt from the Note and the oral loan were combined into one debt, which was subsequently satisfied through a series of payments. Furthermore, defendants attached as exhibits to their motion to dismiss proof of those payments plus an additional amount for interest. Also, Zhundrikova's affidavit explained how Sorkin's claim for damages in his amended complaint included a double counting of the debt. Specifically, he double counted the combined two outstanding debts into a new, separate loan/debt and thereby inaccurately increased his claim for damages by $287,799.15. Furthermore, Zhundrikova's affidavit demonstrated that defendants made over $1.2 million in payments to Sorkin in satisfaction of all alleged debts. We conclude that defendants met their initial burden of presenting affirmative matter defeating Sorkin's amended complaint, so the burden shifted to Sorkin to show that the asserted defense was unfounded or left unresolved issues of material fact as to an essential element of his claim of defendants' outstanding indebtedness.

¶ 30    Sorkin's counter-affidavit, however, was not supported by evidence and failed to refute the material facts averred in Zhundrikova's affidavit, including the combination of the debts, the substance of the proposal submitted by Sorkin's wife, or the double counting of a single debt. In violation of Supreme Court Rule 191, Sorkin's affidavit failed to attach documents to support his allegations of outstanding debts, was conclusory in nature and lacked particularity. See *US Bank, National Association v. Avdic*, 2014 IL App (1st) 121759 ¶ 22 ("a Rule 191 affidavit is a substitute for testimony taken in open court, should meet the same requisites as competent testimony, and must not contain mere conclusions but rather must include the facts upon which the affiant relied").

¶ 31    Sorkin failed to refute or otherwise contest Zhundrikova's averments that when Sorkin's wife faxed a handwritten note on July 21, 2017, with instructions to pay $287,799.15, the sum represented a consolidation of the then-outstanding amount owed from the Debt and the outstanding amount owed on an oral loan, and the consolidated sum was paid in full. Sorkin's contention that the trial court deemed him less credible and thus ignored his brand-new allegation in his affidavit of an additional $300,000 debt that was not alleged in his amended complaint lacks merit. A party's failure to properly contest an affidavit submitted in support of a section 2-619 motion through a counter-affidavit results in an admission of the facts stated therein. *Piser v. State Farm Mutual Automobile Ins. Co.*, 405 Ill. App. 3d 341, 352-53 (2010).  Additionally, a plaintiff may not simply rely on the allegations in his own complaint to refute a section 2-619 affidavit. *Id.* When the parties present the trial court with conflicting affidavits regarding a section 2-619 motion, the court has a duty to either hear other proof bearing on the material facts or deny the

motion without prejudice to the right of the defendant to raise the subject matter thereof by answer. *Etten v. Lane*, 138 Ill. App. 3d 439 (1985). It is improper to simply weigh the conflicting affidavits. *Id.*

¶ 32    Here, however, the trial court did not have conflicting affidavits before it because Sorkin failed to allege in his amended complaint any $300,000 unpaid oral debt, failed to include in his affidavit specific facts or evidence to support such a debt, and failed to contest or refute defendants' well-pled and supported allegations of full payment of their indebtedness to Sorkin. Contrary to Sorkin's assertion on appeal, the trial court did not decide a contested fact in favor of defendants or determine that Zhundrikova's testimony was more credible than Sorkin's. Rather, the trial court applied the uncontroverted facts and evidence to reach its decision. We conclude that Sorkin has failed to carry the shifted burden of going forward, and the trial court properly granted defendants' 2-619 motion to dismiss Sorkin's amended complaint.

¶ 33    Finally, Sorkin argues that the trial court erred by denying his motion to reconsider its order that granted defendants' 2-619 motion to dismiss with prejudice.

¶ 34    A motion to reconsider informs the court about newly discovered evidence, changes in the law or errors in the court's previous application of existing law. *Compton v. Country Mutual Insurance Co*, 382 Ill. App. 3d 323, 331 (2008). Newly discovered evidence is evidence that was not available prior to the first hearing. *Id.* When considering a motion to reconsider, "trial courts should not allow litigants to stand mute, lose a motion and then frantically gather material to show that the court erred in its ruling." *Id.* Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency require that the trial courts not consider such late-

tendered evidentiary material, no matter what the contents thereof may be." *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248-49 (1991). In general, any legal theories or factual arguments that were not previously made are deemed to be forfeited. *River Plaza Homeowners Association v. Healey*, 389 Ill. App. 3d 268, 280 (2009). The burden of proving that sufficient grounds exist to vacate a judgment is on the moving party. *Day v. Curin*, 192 Ill. App. 3d 251, 254 (1989). We review a trial court's denial of a motion to reconsider for an abuse of discretion. *Luss v. Village of Forest Park*, 377 Ill. App. 3d 318 (2007). An abuse of discretion occurs when a ruling is arbitrary, fanciful or unreasonable, or when no reasonable person would take the same view. *Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 18.

¶ 35    The trial court properly denied Sorkin's motion to reconsider because it failed to raise any newly discovered evidence, changes in the law, or errors in the court's application of the existing law. Instead, Sorkin's motion to reconsider improperly attempted to bring up new matters and schedule an evidentiary hearing to introduce alleged new evidence that was not included with his motion to reconsider.

¶ 36    For the foregoing reasons, we affirm the trial court's decision to dismiss Sorkin's amended complaint with prejudice.

¶ 37                              B. Attorney Fees and Costs

¶ 38    After the trial court denied Sorkin's motion to reconsider, defendants petitioned for attorney fees and costs. They argued that they were entitled to an award of fees and costs because they prevailed on their motion to dismiss and Sorkin's allegations concerning the Note and

Parikh's and Zhundrikova's guaranties of payment executed in conjunction with the Note arose out of and were connected to the operating agreement.

¶ 39    On April 24, 2020, the trial court denied their petition, ruling that the dispute did not arise out of and was not connected with the operating agreement because the loans made to Chicago Trans and guaranteed by Parikh and Zhundrikova were not made under the operating agreement, but rather under separate and distinct documents. Moreover, those guarantees clearly imposed an obligation on Parikh and Zhundrikova as individuals and not the company.

¶ 40    Defendants timely filed a cross-appeal. They argue that the trial court erred by denying their petition for attorney fees and costs in the amount of $40,975.50 against Sorkin under the terms of the parties' operating agreement. Defendants argue that they, as the company and members, are entitled to fees and costs because they obtained a judgment in connection with a dispute arising under or in connection with the operating agreement.

¶ 41    Section 11.1 of the parties' operating agreement provided:

> "Loans to Company.  From and after the date hereof, Mikhail Sorkin shall lend such sums to the Company as he, in his sole and unreviewable discretion deems prudent. Each loan shall be evidenced by a Note. The other members shall, upon execution of any such Note by the Company, execute guaranties of such Note severally guarantying one-third of the obligations of the Company pursuant to the Note."

¶ 42    Section 17.10 of the operating agreement provided:

"Attorney's Fees. If the Company, any Member or any member of Management obtains a judgment in connection with a dispute arising under or in connection with any [sic] this Agreement, such party shall be entitled to recover from the non-prevailing party its court costs, and reasonable attorney's fees and disbursements incurred in connection therewith and in any appeal or enforcement proceeding thereafter, in addition to all other recoverable costs."

¶ 43    Defendants argue that their need to defend themselves and to continue defending themselves from the litigation initiated by Sorkin unquestionably arises from and is connected to the operating agreement. They argue that the express language in the agreement forms the exact mechanism used by the parties to facilitate the Note and the Debt that gave rise to the parties' dispute. Defendants assert that by successfully defending themselves from Sorkin's attempts to enforce the Note, which stemmed directly from the operating agreement, they are entitled to recover the reasonable attorneys' fees and court costs incurred in the instant matter. They contend that the trial court's decision that the dispute between the parties was brought under a separate promissory note and loans made to Chicago Trans should be overturned.

¶ 44    The issue here of contract interpretation is a matter of law, which we review *de novo*. *Shield v. Judges' Retirement System*, 204 Ill. 2d 488, 492 (2003). Where statutorily provided for or by agreement, "the court may award attorney fees and costs to a prevailing party so long as they are reasonable." *Thomas v. Weatherguard Construction Company, Inc.*, 2018 IL App (1st) 171238,

¶ 61. Additionally, defendants may be prevailing parties for the purposes of fee shifting provisions. *Krautsack v. Anderson*, 223 Ill.2d 541, 554 (2006).

> "Generally, each party in a case is responsible for its own attorney fees and costs unless there is express contractual or statutory language to the contrary. [Citation.] Since it is an exception to the general rule, a contract provision that provides for payment of the other party's attorney fees is strictly construed by courts. [Citation.] Therefore, a reviewing court will interpret fee-shifting provisions to mean nothing more—but also nothing less—than the letter of the text. [Citation.] Strict construction of fee-shifting provisions is warranted because attorney fees can be a substantial expense and are an important consideration when entering into contracts. [Citation.] We review the trial court's interpretation of a fee-shifting provision in a contract *de novo*. [Citation.]" *Willis Capital LLC v. Belvedere Trading LLC*, 2015 IL App (1st) 132183, ¶ 24.

¶ 45 According to defendants, the key phrase "or in connection with" in the operating agreement broadened the applicability of the phrase "arising out of" just as if the operating agreement had included the key phrase "or relating to." Specifically, defendants contend that the language in the operating agreement concerning attorney fees included the phrase "in connection with a dispute arising under or in connection with [the operating agreement]," which broadened the applicability of the provision to the Note, the Debt, and the litigation that arose therefrom because the "in connection with" language was akin to the broadly applicable language of "or relating to." Defendants assert that the attorney fees provision of the operating agreement included sufficient

language to broaden its application to those agreements arising out of or in connection with the contract, including the Note and those matters contemplated in the amended complaint, and they are entitled to an award of their reasonable attorney fees as a result, including the fees incurred as a result of this appeal.

¶ 46 We disagree. The language of the attorney-fees provision in the operating agreement limited recovery of attorney fees to a dispute that arose under or in connection with the operating agreement. Personal guarantees executed in individual capacities ensuring a corporation's performance are independent contracts, separate from the negotiable instruments. *Ishak v. Elgin National Bank*, 48 Ill. App. 3d 614, 617 (1977). The clear language of the personal guarantees signed by Parikh and Zhundrikova imposed an obligation on them as individuals, as opposed to the company, stating "if for any reason [Chicago Trans] fails to pay or is unable to pay, punctually and fully, any of [Chicago Trans'] obligations, the Guarantor shall pay such obligations to [Sorkin] in full immediately upon demand." Sorkin's cause of action was brought under the Note, loans given and guarantees received, separate and distinct from, and not in connection with, the operating agreement. Because this action did not arise under or in connection with the operating agreement, defendants are not entitled to their attorney fees and costs by virtue of any right granted under the operating agreement. We conclude that the trial court did not err by denying defendants' petition for attorney fees and costs.

¶ 47                                    III. CONCLUSION

¶ 48 For the foregoing reasons, we affirm the trial court's judgment that granted defendants' 2-619 motion to dismiss and denied defendants' petition for attorney fees and costs.

¶ 49    Affirmed.

¶ 50    PRESIDING JUSTICE GORDON, concurring in part and dissenting in part:

¶ 51    On May 1, 2016, the operating agreement was executed by the parties and, on the same date, Sorkin loaned the corporation $250,000, and Parikh and Zhundrikova each executed a guaranty of the note and Parikh executed the note on behalf of the corporation.

¶ 52    Section 17.10 of the operating agreement provided:

"*Attorney's Fees.* If the Company, any Member or any member of Management obtains a judgment in connection with a dispute arising under or in connection with any [*sic*] of this Agreement, such party shall be entitled to recover from the non-prevailing party its court costs, and reasonable attorney's fees and disbursements incurred in connection therewith and in any appeal or enforcement proceeding thereafter, in addition to all other recoverable costs." (Emphasis in original.)

¶ 53    Section 11.1 of the operating agreement provided:

"Loans to Company. From and after the date hereof, Mikhail Sorkin shall lend such sums to the Company as he, in his sole and unreviewable discretion deems prudent. Each loan shall be evidenced by a Note. The other members shall, upon execution of any such Note by the Company, execute guaranties of such Note severally guarantying one-third of the obligations of the Company pursuant to the Note."

¶ 54    I agree with the majority's decision in the dismissal of Sorkin's amended complaint. However, I must respectfully disagree with its decision as to the issue of attorney fees and recoverable costs. I find no legal basis for the majority's finding as to denying attorney fees and

recoverable costs. In the case at bar, attorney fees are discussed in section 17.10 of the operating agreement, which provides for attorney fees "[i]f the Company, any Member or any member of Management obtains a judgment in connection with a dispute arising under or in connection with any [*sic*] this Agreement." The majority finds that Sorkin's cause of action did not arise under or in connection with the operating agreement, because the note and guaranties were "separate and distinct from" the operating agreement. *Supra* ¶ 46. I cannot agree with this finding.

¶ 55    The majority notes that personal guaranties executed in individual capacities ensuring a corporation's performance are independent contracts, separate from the underlying obligation. *Supra* ¶ 46. I have no quarrel with that statement. However, it is entirely irrelevant to the issue before us. The fact that the guaranties are legally distinct from the underlying note has no bearing on their relationship with the operating agreement. Moreover, there is no reason why a document with independent legal significance cannot also lead to a dispute "arising under or in connection with" the operating agreement, and the majority does not explain in its decision why it concludes that the two are mutually exclusive.

¶ 56    The words "in connection with" simply mean "in relation to" something, or "for reasons that relate to" something. "In connection with," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/in%connection%with (last visited May 19, 2021); see also "In connection with something," Macmillan Dictionary, https://www.macmillandictionary.com/us/dictionary/American/in-connection-with-something (last visited May 19, 2021) (defining "in connection with something" as "relating to something").

¶ 57　In the record before us, it is clear that the note and the guaranties were executed in connection with the operating agreement. Section 11.1 of the operating agreement obligated Sorkin to lend funds to Chicago Trans as he deemed appropriate. Section 11.1 further required that each loan be evidenced by a note, and that the remaining members execute personal guaranties of the note. The note and guaranties at issue in the case at bar would not exist but for the terms of the operating agreement. As the majority itself acknowledges, defendants claim that "[t]he express language in the agreement forms the exact mechanism used by the parties to facilitate the Note and the Debt that gave rise to the parties' dispute." *Supra* ¶ 43. Furthermore, the note and guaranties were executed on the same day as the operating agreement, on May 1, 2016, further evidencing that the documents are related. Defendants also relied on the operating agreement as a basis for their motions to dismiss both the original and amended complaints, claiming that, even if the note had not been fully paid, the terms of the operating agreement invalidated the guaranties. There is simply no way to conclude that the note and guaranties are unrelated to the operating agreement and, therefore, I would grant defendants' request for attorney fees and recoverable costs as provided in section 17.10 of the operating agreement.